THOMAS H. FORDE and AIMEE B. FORDE, His Wife, and
JORGE B. SANCHEZ, EMILLIO SANCHEZ, LUIS PENA
ARCHE and MANUEL BENITEZ VALDES v. THE CITY OF
MIAMI BEACH, a Municipal Corporation, and C. C. YOU-
MANS and MABEL H. YOUMANS, His Wife.

1 So. (2nd) 642
En Banc
Opinion Filed April 18, 1941

*Stapp, Ward & Ward, A. Frank Katzentine* and *W. Sanders Gramling,* and *Alonzo Wilder,* for Appellants;

*C. C. Youmans,* for Appellees C. C. Youmans and Mabel H. Youmans, his wife, and *J. Harvey Robillard* and *Loftin, Calkins, Anderson & Scott,* for Appellees.

BROWN, C. J.—The complainants, Thomas H. Forde and

wife, filed their bill of complaint seeking to enjoin the enforcement of the provisions of zoning ordinance No. 289 of the City of Miami Beach insofar as the same applies to restrict the use of their property. The other appellants, Jorge B. Sanchez, Emilio Sanchez, Luis Pena Arche and Manuel Benitez Valdes intervened in the cause, seeking similar relief insofar as the same ordinance affected their property.

The matter was referred to H. H. Eyles, Esq., as special master for the purpose of taking the testimony upon the issues and reporting his findings of fact and law thereon. The record shows that the original bill of complaint involved only lots 40, 41 and 42, of Block 1 of Second Ocean Subdivision, and that the bill of intervention involved only lots 23, 24, 25, 26, 27, 28, 29, 33 34, 38, 39 and the south 25 feet of lot 35 in the said Block 1 and certain other lots situate in Blocks 3 and 7 of the said subdivision, all of which property is restricted to single family estate uses by zoning ordinance.

After hearing the testimony, the master filed his report wherein he recommended that the bill of intervention be dismissed without prejudice as to the said lots in Blocks 3 and 7, and no error has been assigned to that ruling. However, the master further found that the provisions of the ordinance as applied to those lots in Block 1 were unreasonable and confiscatory, and recommended that the relief prayed for in the respective bills be granted. The appellees filed exceptions to this latter recommendation which were sustained by the chancellor. Therefore, the only lands involved herein are those described as being in Block 1.

In dismissing the bill of complaint and the bill of intervention, the learned chancellor ruled that neither the plaintiff nor the intervenors had proved the allegations therein set

forth as required under the rule announced by this Court in State *ex rel.* Helseth v. DuBose, 99 Fla. 812, 128 So. 4, and State *ex rel.* Taylor v. City of Jacksonville, 101 Fla. 1241, 133 So. 114, in that they had failed to clearly show that the ordinance, as applied to the locus in question, was arbitrary and unreasonable and had no substantial relation to the public health, safety, morals or general welfare. The question thus presented is whether or not the chancellor erred in entering the above order.

The ordinance involved herein was adopted by the Miami Beach City Council in the latter part of 1930 under authority of Chapter 9837, Special Laws of Florida, Acts of 1923. Prior to the adoption of the comprehensive zoning plan, the city governing body, with commendable wisdom and foresight, conducted a number of hearings, through a committee, at which the property owners were heard and local conditions studied, and, in addition, an expert in municipal planning of national reputation was employed to assist and consult with the zoning commission in the survey of existing development and plotting the probable future trend. It was only after these thorough preparations that the ordinance was passed.

Considered as a whole, the single family estate use district in Block 1 comprises some twenty lots, each having a front footage of approximately 75 feet, making a total of 1,500 feet lying between the Atlantic Ocean and Collins Avenue, the main artery of north-south travel. The district is bounded on the north by lot 43, owned by the appellant Forde, upon which an apartment house has been constructed, and which lot is immediately south of and adjacent to the McFadden-Deauville Casino, a large hotel and health resort. To the south of this single family use district lies another district zoned for hotels and apartment houses, which has already been utilized by two such structures. The record

further shows that there has been no development whatever upon this 1,500-foot strip in Block 1, lying between Lot 43 on the north and the hotel and apartment house district to the south. In Block 7, however, which is across the street from Block 1, and fronting on the west line of the street (Collins Avenue), there is another district zoned for single family residences in which some thirteen residences stand at the present.

The appellees, who were defendants below, contend that this ocean front property in Block 1 is suitable and desirable for private estates and is properly zoned; that appellants purchased their lots during the past few years, subject to the zoning ordinance; that due to the above-mentioned development in Block 7, the whole section has now assumed a residential character and that to permit multiple family dwellings or hotels in the 1,500-foot tract would destroy that general atmosphere and cause a consequent depreciation in value of the property in Block 7 and vicinity; that to lower the restrictions and permit multiple family structures to be built thereon, would create a serious traffic problem on Collins Avenue, and thereby endanger the public safety. It is further contended by the City that the restrictions, as now existent, are reasonable and necessary to the accomplishment of the city-wide comprehensive zoning plan adopted by ordinance after careful consideration in 1930, whereby some 3,126 lots were zoned for multiple-family use of which only 1,000 have been utilized, and some 5,415 lots were zoned for single-family use of which 3,200 have been utilized. It is the city's argument that these figures show that with the continuation of the trend of building made in the period since the enactment of the zoning ordinance, the amount of property available for hotels and apartments is greatly in excess of the requirements in comparison with the property

available for single-family construction, and that the plan should not be disturbed.

In each case where an attack is made upon the validity of a zoning ordinance, insofar as its provisions apply to limit and restrict the litigants' property, as in the case at bar, a mixed question of law and fact is presented. In this State, it is no longer questioned that a municipality may be vested by the Legislature with the power to enact a valid zoning ordinance and that a general attack thereon will ordinarily fail; nor is it questioned that the right of an urban owner to the free use of his property may be regulated by a legitimate exercise of the police power, and when so asserted, fairly and impartially in the interest of the public health, safety, morals, or general welfare, the courts will not substitute their judgment for that of the public officials duly authorized in the premises unless it clearly appears that their action has no just foundation in reason and necessity. On the other hand, if the application of the zoning ordinance has the effect of completely depriving an owner of the beneficial use of his property by precluding all use, or the only use, to which it is reasonably adapted, an attack upon the validity of the regulation, as applied to the particular property involved, will be sustained (State *ex rel.* Helseth v. DuBose, *supra;* State *ex rel.* Taylor v. Jacksonville, *supra*) and such an ordinance as the one here under consideration must not infringe the constitutional guaranties of the national or State Constitutions by invading personal or property rights unnecessarily or unreasonably. Blitch v. Ocala, 142 Fla. 612, 195 So. 406.

The object of all use zoning, in a measure at least attainable, should be to put the land to the uses to which it is best adapted, and the result will normally be to increase values.

That the governing body of the City of Miami Beach had

this principle in mind when the zoning ordinance was adopted ten years ago is indicated by the marvelous growth of this municipality. Such a zoning plan should be sufficiently stable to protect those who comply with the law, but at the same time, it should be susceptible to change, so that it can be altered to meet changing conditions not adequately recognized or not possible to foresee when the ordinance was adopted.

Appellants recognize these principles; but they contend that although the ordinance may have been reasonable at the outset, yet by reason of changes wrought by nature in the physical character of the property in litigation, in part since the enactment of the ordinance, it is no longer suitable and desirable for residential use, and that the effect of the existent restriction is to deprive them of the beneficial enjoyment thereof. It is mainly upon this difference in view that the case has arisen, for there is little material conflict in the factual testimony given, the real conflict being in the opinion evidence as to the desirability *vel non* of the property in question for residential estate purposes.

It appears to be admitted by appellees that such ocean front lots, at the time they were originally platted by the owner had an average depth of approximately 240 feet, but appellants contend that by reason of erosion caused by the hurricane of 1926 and subsequent storms and changes in the ocean currents, and possibly from the construction of groins to the north and south, they now have an average depth, measured from Collins Avenue to the erosion line, of approximately 60 to 70 feet, and from Collins Avenue to the ordinary high-water mark of approximately 117 to 160 feet. The master so found and the evidence bears out this finding. It is well established by the evidence that no development has been made or attempted upon this 1,500-foot tract since the adoption of the zoning ordinance, and

that no present market or demand for this property for residences exists. It is further admitted that to make any use of this property, either for private estates or for hotels or apartments, would be impossible without extensive reclamation, and that such reclaiming operations would include the building of sea-walls, some refilling, and the building of groins, and would require the prospective home builder to expend a sum estimated variously to be between $7,500 and $15,000 per lot. The master found, and it is not contradicted, that although there has never been any development of these lots for estate purposes, the taxes and lien assessments upon them exceeded $500 per year for each lot; and that the bulk of the north-south traffic passed this property.

Some ten or twelve years before this suit was brought in June of 1938, it could not be denied that the lots in litigation were physically suitable for residential estates, but since the hurricane of 1926 and subsequent storms, the action of the ocean has eaten away so much of the land that it is of little use without extensive reclamation work. It appears from the evidence that to make it suitable again for such purposes would entail such expense that even the well-to-do person of average means could not afford to build thereon, and while it may be true, as the City contends, that only those persons willing to pay in excess of $40,000 for improvements buy ocean-front property, yet it appears by the weight of the evidence that no demand now exists for this particular property for private estates, and that it cannot profitably be used for residential purposes. Witnesses for the City were of the opinion that it is only a question of time when the northward growth of the city will create a demand for this property for residential uses. Judging the future by the past, the city will undoubtedly continue to grow, but just how long it will take for the growth to create

a demand for this property for private estate purposes is, at most, a matter of opinion, and is at best problematical.

The case is a difficult one, indeed rather unique; but we feel the facts established by appellants are controlling. Restrictions on private property must be kept within the limits of necessity for the public welfare or it will be recognized as an unlawful taking. Avenue Bay Constr. Co. v. Thatcher, 278 N. Y. 222, 15 N. E. (2d) 587, 117 A. L. R. 1110. And when property, restricted to a defined use by a zoning ordinance, changes its physical character from natural causes to the extent that it is no longer adaptable to the use it is zoned for, then it becomes the duty of the zoning board to relax its restrictions to prevent confiscation just as much so as in the case where the regulation was invalid in the first instance. See State *ex rel.* Taylor v. Jacksonville, *supra;* *Ex Parte* Wise, 141 Fla. 222, 192 So. 872.

The appellees, however, point to the fact that the property is presently as unfit for multiple-family dwellings as for residential estates; yet the difference exists in that if one should build a residence there is little or no expectation of pecuniary recompense for expenditures made for the necessary reclamation, while if one should erect a multiple-family structure, there is a return reasonably anticipated upon the investment. Justification then, if any, for the ordinance under consideration, insofar as it limits the use of appellants' property, must be found in the control over future development which might result from such regulation. If it be true, as argued by the City, that the reason no market at present exists for this property for private estate is due to a failure of the city's growth to have reached this far north, then there might be a basis for the ordinance as applied to this particular property if the future time element of the City's growth northward could be predicted with any

certainty. But the mere opinion or belief that a prospective demand will develop for this property for private estate purposes in the not distant future, as weighed against the concrete fact that it is unfit as it stands for the purpose to which it is restricted, cannot indefinitely serve as the basis for the continuation of a zoning restriction such as we have here, as to this particular property, and is not sufficient to overcome the inherent right of the owner to appropriate the locus to the presently beneficial use he proposes. See State *ex rel.* Helseth v. DuBose, *supra.*

It appears that this property in its present state and under the present zoning restrictions must remain for the present and for an unpredictable future period unimproved and unproductive, and a source of expense to the owners, the annual taxes being quite heavy. It is apparent that if the present lack of demand for this property for private estate uses should not change, the value of the property would largely be consumed by the payment of those taxes, and that to continue the present restrictions in effect would almost, if not quite, amount to a taking without compensation, and hence beyond the realm of valid regulation. It is our conclusion that the weight of the evidence tends to establish the unreasonableness of the ordinance insofar as its provisions apply to these appellants' property in Block 1 of Second Ocean Subdivision, and that the able chancellor erred in sustaining the exceptions to the master's report.

Reversed.

WHITFIELD, TERRELL and BUFORD, J. J., concur.

CHAPMAN and THOMAS, J. J., dissent.

ADAMS, J., disqualified.