71 So.2d 148 (1953)
CITY OF MIAMI BEACH
v.
LACHMAN et al.
Supreme Court of Florida. En Banc.
December 11, 1953.
Rehearing Denied April 9, 1954.
*149 Ben Shepard and Anderson & Nadeau, Miami, for appellant.
Pallot, Silver & Mulloy and John M. Murrell and John M. Murrell, Jr., Miami, for appellees.
PER CURIAM.
Ten different property owners in Miami Beach brought separate suits to restrain the city from enforcing Zoning Ordinance 289, in so far as it affects their properties. The said properties are embraced within a narrow strip of ocean frontage about two miles long, bounded on the south by what is known locally as the Firestone Estate, on the north by Royal York Hotel property, on the east by the Atlantic Ocean, and on the west by Collins Avenue and Indian Creek. It is shown that all the properties are similarly affected by the ordinance and that in each case there is a common question.
Prior to the institution of these suits, complainants applied to the Zoning Board to rezone their properties and relieve them from the requirements of Ordinance 289, but their application was denied, and on appeal to the City Council, the order of the Zoning Board was approved. Answers to the complaints were filed and the cases were consolidated and tried together. The evidence was taken by the Court and on final hearing motion of the city to dismiss was overruled and the relief prayed for was granted. One transcript has been lodged in this Court. It is composed of what was known under the old practice as the record proper and the bill of exceptions. It suffices for the main case. The other cases are here on the record proper. We approve this practice where more than one case is appealed. This opinion will dispose of all the appeals.
The primary question for determination is whether or not the plaintiff sustained the burden of showing that Zoning Ordinance 289 is unreasonable and not fairly debatable as applied to the properties of the plaintiff.
Both sides produced an impressive array of witnesses to support their contention, that is to say, the affirmative and the negative of this issue. They represented eminent economists, realtors and appraisers, municipal and county planners, city managers, economic analysts, builders and brokers, and directors of city planning boards, each fortified with a background of broad experience. The evidence supporting the issues was thoroughly explored.
On the evidence thus produced, the chancellor found that Ordinance 289 was enacted in 1930, since which time economic conditions in Miami Beach and the country at large have changed materially; that the property involved is a portion of 86 lots located between the Firestone Estate and the south line of the Royal York Hotel property; that said properties are bounded on the east by the Atlantic Ocean, on the west by Collins Avenue and Indian Creek, and that while the development of Miami Beach has been phenomenal, this strip of 86 lots has been in a state of arrested development. The testimony shows, said the trial court, that there are very few families in the United States of sufficient means to own and support a home of the proportions required for these properties. One witness testified that the taxes, insurance and upkeep of his home was $15,000 per year, that the liberties taken of his place by the public with accompanying noise became so annoying that he was compelled to move out and rent it *150 and the most he could secure for it was $7,200 per year. The Court's conclusion was that the property may have been suitable for single family residences when it was first zoned in 1930, but that under present restrictions, it is unproductive and a source of expense to the owner that will ultimately amount to confiscation. On the basis of this finding the Court ruled that said Ordinance restricting the property to single family residential use was arbitrary, unreasonable, oppressive, discriminatory and confiscatory, and bore no reasonable relation to, and was not conducive to the welfare of the public. Accordingly, he ordered it rezoned for apartment house and hotel purposes.
The effect of the trial court's ruling was to hold that the ordinance was unreasonable and not "fairly debatable". In so holding did he properly appraise the evidence? In its highly controversial state did the trial court substitute his judgment for that of the City Council, and under the circumstances was he warranted in doing so? The leading case in the country on the question is Village of Euclid, Ohio v. Amber Realty Company, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016, but we do not have to leave our own State in search of law to settle the point. In addition to the last cited case, appellant relies on State ex rel. Taylor v. City of Jacksonville, 101 Fla. 1241, 133 So. 114, City of Miami Beach v. Elsalto Real Estate, Inc., Fla., 63 So.2d 495, Segal v. City of Miami, Fla., 63 So.2d 496, and State ex rel. Office Realty Company v. Ehinger, Fla., 46 So.2d 601. Appellee relies on Forde v. City of Miami Beach, 146 Fla. 676, 1 So.2d 642, City of Miami Beach v. Ocean & Inland Co., 147 Fla. 480, 3 So.2d 364, and City of Miami Beach v. First Trust Co., Fla., 45 So.2d 681.
Village of Euclid, Ohio v. Amber Realty Company approved the authority of a municipality to promulgate zoning regulations on the theory that the increase and concentration of population has developed and will continually require more restrictions in respect to the use of private property in urban centers. This case also promulgated the doctrine of legislative classification for zoning purposes and declared that if "fairly debatable" it should be upheld. The argument in the case at bar revolves around this doctrine. While Village of Euclid, Ohio v. Amber Realty Company approved the zoning and segregation of private property into residential, business, and industrial districts, it was as equally emphatic that if such zoning did not have some substantial relation to the public health, safety, morals, and general welfare, it would be held to be arbitrary, unreasonable, and unconstitutional. There is no warrant whatever in this, or any other, case to support the thesis that zoning boards are infallible and that any kind of a zoning proposition they promulgate will be upheld. In other words, zoning boards are in the same category as all other administrative boards. Their ordinances and regulations will be given serious consideration and their judgments great weight, but where it is conclusively shown that they deprive one of his property without due process or otherwise infringe on State or Federal constitutional guarantees unreasonably, such ordinances and regulations cannot be said to be reasonably debatable and will be stricken down.
We understand the doctrine of Marbury v. Madison, 1 Cranch 137, 2 L.Ed. 60, to be applicable. "When it is clear that a statute transgresses the authority vested in the legislature by the constitution, it is the duty of the courts to declare the act unconstitutional because they cannot shrink from it without violating their oaths of office. This duty of the courts to maintain the constitution as the fundamental law of the state is imperative and unceasing" and applies as imperatively when properly invoked against a zoning ordinance as it does against an act of the legislature. In State ex rel. Taylor v. City of Jacksonville; City of Miami Beach v. Elsalto Real Estate, Inc.; Segal v. City of Miami; Forde v. City of Miami Beach; City of Miami Beach v. Ocean & Inland Co. and City of Miami Beach v. First Trust Co., supra, we called attention to this rule and in some instances invoked it.
*151 But appellant says that in City of Miami Beach v. Elsalto Real Estate, Inc., and in Segal v. City of Miami, supra, we retreated from or modified the doctrine of City of Miami Beach v. First Trust Company, better known as the Firestone case. We do not so understand the Firestone case. In that case we were confronted with one isolated tract of land that had served its purpose as an estate and was in the hands of the trustee for disposition. All of the land to the south between Collins Avenue and the ocean had been zoned and sold for hotel and apartment houses and in fact, was occupied for that purpose. It was shown, and the Master found, that the passage of time and changed circumstances had reduced the value of the property by three-fourths and that if it were sold for single family purposes the owner would lose more than one million dollars. It was further shown that the zoning ordinance had been in effect fifteen years, during which time many physical, economic, and social changes in the locus had transpired. It was conclusively shown that not a single property owner in the city would be hurt by removing the zoning restrictions from the Firestone estate; yet if the restrictions were permitted to remain, they would cost the owners more than a million dollars. It was also shown "that the zoning plan of the city [would not] be jeopardized or materially affected" by removing the zoning restrictions. [45 So.2d 688.] Under such circumstances a majority of the court concluded that the zoning plan amounted to confiscation and removed it from the Firestone lands. In the case at bar there is substantial showing that the sweeping rezoning sought for the property in question would jeopardize, or materially affect, the entire comprehensive zoning plan of the City as well as other matters which will be discussed hereafter.
When the Firestone case was before us originally and on rehearing, the main question urged was no different from that urged in this case, viz.: The zoning ordinance is presumptively valid, that if fairly debatable the action of the city in passing it should be upheld and the Court should not substitute his judgment for that of the City Council. The case was thoroughly litigated on that theory. The majority of the Court reached the conclusion that due to changed conditions the validity of the ordinance was not fairly debatable, that it was unreasonable, arbitrary and invalid and amounted to confiscation as to the Firestone property. True, a very respectable minority of the Court had a different view and dissented from the majority. It may be that the minority thought the point was fairly debatable and that the majority substituted its judgment for that of the City Council, but the majority had no such feeling.
So much for the Firestone case.
Now let us examine the case at bar and see if it is in point with or in any wise controlled by the Firestone case or any other case cited herein. Instead of being concerned with a single isolated tract of land, as we were in the Firestone case, we are concerned here with ten tracts interspersed among 86 lots or tracts extending from the Firestone estate north to the Royal York Hotel property, a distance of about two miles, bounded on the east by the Atlantic Ocean and on the west by Collins Avenue and Indian Creek. It is one of the most valuable ocean front areas in the world. So valuable, it is pointed out, that there are only about 4500 people in the United States who are able to own enough of it on which to construct and support a home of the kind required by the ordinance account of which it is said to be in a state of arrested development.
The City of Miami Beach declined the request of complainants to rezone on the general theory that Ordinance 289 was adopted pursuant to Chapter 9837, Special Acts of 1923, after more than a year of study and advice on the part of the best zoning experts in this country, that due to the location and configuration of the land it is ideally suited to single family estates, that it is a long narrow strip along the ocean transversed on the west by Collins Avenue, which is heavily congested and that to rezone would seriously aggravate *152 the traffic problem, that there is already an undue preponderance of land in the City of Miami Beach zoned for hotel and apartment use, and at present there is no need for more, that to make other lands available for that purpose would seriously damage, if not destroy, the values of lands and buildings now in use for that purpose on which countless millions have been invested in reliance on Ordinance 289, that the economic welfare of the city is almost entirely dependent on the prosperity of the hotel and apartment house business, that the economic history of that business in the City of Miami Beach has demonstrated that the construction of other new and modern hotels to the north would so reduce the patronage of those already in use that they would become so needless and unpopular as to raise the danger of creating a blighted area. It is further charged that the 86 lots in question are the only lands in the City of Miami Beach that are available to the public where the view to the ocean is unobstructed, and that rezoning for hotels and apartments will result in overcrowding, the increase of fire and other hazards and would overtax the sewer, water and fire fighting facilities, thus endangering the public health and safety.
There is ample evidence to support the theory of the city; on the other hand, there is much to contradict or offset it. It is not shown, as it was in the Firestone case, that if the zoning restrictions are removed no other property owner would be hurt or that the general zoning plan would remain unaffected. The reasonable inference is that if the zoning restrictions are removed from the ten tracts interspersed among the 86 tracts, the zoning plan as to all will be materially affected, if not, in fact, destroyed. The city contends that not only is this likely to happen but also that there will be brought about the other results detailed in the preceding paragraph. Some of the results contended for in this paragraph we do not think of consequence and could be compensated for, but some of them raise serious policy, economic and administrative questions that place it within the "fairly debatable" doctrine.
An ordinance may be said to be fairly debatable when for any reason it is open to dispute or controversy on grounds that make sense or point to a logical deduction that in no way involves its constitutional validity. If such a deduction supports the city's contention that to remove the present zoning restrictions would destroy the entire zoning scheme and bring about the evils contended by the city, then the Court should not substitute its judgment for that of the City Council. There is no showing here that, even as now zoned, the lands are not of great value. In fact the only deduction from the record is that they are very valuable. When the contention of the city is analyzed and viewed in the large, there are many elements in this case that were not involved in the Firestone case, or any of the other cases cited. They make this case totally different from any other that has been brought here. The right of access of the public to the beaches, the effect on the zoning scheme, traffic regulations, economic welfare of the city, proper timing to zone for hotels and apartments, including others, are involved in this case. The amount of property involved is so great that to change its classification would be to necessarily affect the entire general zoning plan of the city. These are matters for the city to settle and adjust and when they enter the picture the Court should not invade the city's authority, absent a paramount constitutional right which is not shown in this case.
The fact that the properties involved are much more valuable for hotels and apartments than they are for single family residences does not conclude the point of whether or not the ordinance is "fairly debatable". This is a factor that must be weighed against the public welfare or the effect on the community at large. Constitutionality vel non is often present in determining the question of "fairly debatable" but the pattern for determining it is a more complex one when as pointed out, a large area of many owners is involved than it is when the property of a single owner in one parcel is brought in question. There is no showing here of confiscation. It may or *153 may not be that some owners will suffer a reduction in price if they sell before the city in its discretion changes the zoning plan. After all, that is the matter of greatest importance, and it is a debatable question. It cannot be solved by looking at one man's property, but must be resolved by a contemplation of the whole picture. So considered, we find no abuse of discretion.
Other questions presented have been considered but they become inconsequential or have no place in the case. Whether answered in the affirmative, or in the negative, the answer to the first question concludes the controversy. We think the first question was fairly debatable and that the decree of the chancellor should be reversed.
Reversed without prejudice on the part of appellees to assert any right they may have under the city charter.
TERRELL, SEBRING, MATHEWS and DREW, JJ., concur.
THOMAS, J., concurs specially.
ROBERTS, C.J., and HOBSON J., concur in part and dissent in part.
THOMAS, Justice (concurring specially).
I concur in the conclusion for the reasons given in my dissenting opinion in City of Miami Beach v. First Trust Co., Fla., 45 So.2d 681.
ROBERTS, Chief Justice (concurring in part and dissenting in part).
While I concur in the judgment of reversal, it is my opinion that this case turns on the fundamental proposition that the courts are not law-making bodies. The City Council of the City of Miami Beach is the legislative body whose duty it is to "amend, supplement, change, modify or repeal the regulations and boundaries" established in the Zoning Ordinance of that city if, after a public hearing, it is determined that a change in the original zoning plan would best serve the public health, safety and general welfare; and the courts of this state have no authority to do so. As stated in Cleveland Trust Co. v. Village of Brooklyn, 92 Ohio App. 351, 110 N.E.2d 440, 445, appeal denied 158 Ohio St. 258, 108 N.E.2d 679:
"Granting the jurisdiction of the court in a particular case to declare invalid the whole or any part of a zoning ordinance in appropriate proceedings where the zoning in question is an invasion of constitutional rights, having no relationship to the public safety, health, morals or general welfare of a community, there is a restriction upon the judicial process whereby it is limited to a review of legislation to determine whether the legislative body acted in such an unconstitutional manner. It is fundamental that a court may not legislate. The judicial process is to interpret the law and not to make law. Consequently, the trial court in the instant case was without jurisdiction to determine the ultimate classification of the area in question as a Class E or industrial use by ignoring the other intermediate uses established by the ordinance, and thereby substituting its judgment for that of the council of the village of Brooklyn. Its action in so doing was prejudicially erroneous * * *."
Clearly, the basic principle upon which our system of government is based  requiring, as it does, the distinct separation of the executive, legislative and judicial branches of government  prohibits our courts from infringing upon the city's legislative powers with respect to zoning, as well as any other legislative power properly delegated to a municipality by the Legislature. And, in my opinion the lower court in the instant case has, in effect, usurped the legislative power of the city's Zoning Board. Let us analyze the facts here involved.
The plaintiffs applied to the City Council of the City of Miami Beach for a change in the zoning classification of their respective lots from an RAA use to an RE use  that is, from the most restrictive single-family *154 residential use, requiring a lot area of 40,000 sq. feet, to multiple-family use in which hotels are permitted to be located. In the original application to the City Council filed by the attorney representing six of the plaintiffs, the request was that "the City Council of the City of Miami Beach take into immediate consideration the rezoning of the property hereinbefore described [comprising 8 1/2 lots of a total of 86 lots in the strip of land in question] from its present zoning under the provisions of Miami Beach Zoning Ordinance No. 289 to RE." In an amendatory letter sent later to the City Council, the previous letter was clarified to indicate that the request was "that the City Council of the City of Miami Beach conduct a public hearing in the manner prescribed by law and/or established by custom for the purpose of considering the rezoning of certain parcels of land from their present zoning under the provisions of Miami Beach Zoning Ordinance No. 289 to RE zoning." The request on behalf of Mrs. Reid, one of the plaintiffs herein, was simply that the city "change the zoning that exists at the present time, to-wit, R-AA Estate District Single Family, so as to allow for multiple family, apartment and hotel use of the above described property." The attorney for Mrs. Reid was advised by the City Clerk that this request had "been presented to the City Council at their recent meeting and has been denied." The record shows that the requests for rezoning of at least some of the property were referred to the Zoning Board of Adjustment; that the Zoning Board of Adjustment had recommended that the requests for rezoning be denied; and that "The Council voted unanimously to accept the recommendation of the Zoning Board and to deny the requests for rezoning."
No attempt was made by the plaintiffs to compel the city to hold a public hearing, as requested in the amendatory letter of one of the attorneys, on the question of rezoning their property to an RE use; nor is there anything in the record to show that the plaintiffs in requesting such public hearing represented "the owners of a majority of frontage" in the particular area here in question  that is, the strip of ocean front property between the Firestone Estate on the south and the Royal York Hotel on the north (hereinafter referred to as "the strip")  as provided by Section 21 of the Zoning Ordinance (No. 289) of the City of Miami Beach. Both the general law relating to zoning (Section 176.05, Florida Statutes, F.S.A.) and the Zoning Ordinance of the City of Miami Beach (Section 21) provide the method by which a given area may be "rezoned"; both require a public hearing, after public notice, before any change in or amendments to the zoning ordinance can be made.
It is clear, then, that the applications to the city of the respective plaintiffs were, in essence, either requests for a "variance" from the ordinance or they were requests for "spot zoning." A "variance" on the ground of unnecessary hardship is authorized only when it is shown that the use to be authorized by the variance will not alter the essential character of the locality  the variance must be "consistent or in harmony with, or not subversive or in derogation of, the spirit, intent, purpose or general plan of such regulations." Troup v. Bird, Fla., 53 So.2d 717, 721, citing 58 Am.Jur., Sec. 200, p. 1049. Clearly, the use sought by the plaintiffs was not "consistent or in harmony with" the use classification of "the strip", as it is presently zoned, so that a "variance" could not validly have been granted.
And certainly a rezoning by the City Council of the 14 1/2 lots here involved (interspersed as they were among 86 lots similarly situated) would have been nothing less than "spot zoning", a practice universally condemned. See Yokley, Zoning Law and Practice (1948) Sec. 82, page 152.
Thus, the plaintiffs' only administrative remedy here to obtain a change in the zoning of their lots from RAA to an RE use was to compel the City Council to hold a public hearing, after due public notice, as required by Section 21 of the Miami *155 Beach Zoning Ordinance and Section 176.05, supra (the provisions of which are expressly stated to be cumulative to any local or special zoning laws), on the question of whether the entire area involved should be reclassified from an RAA to an RE use; if after such hearing the City Council refused to rezone the area, as requested, then it may be that in a judicial review of the decision of the local zoning authority, as authorized by Sections 176.16 et seq., Florida Statutes, F.S.A., the court would be authorized to decide the question of whether the zoning authority's refusal to rezone in the requested manner was an unreasonable exercise of the zoning power.
But no such case was here made. Thus, the only question before the lower court was whether the existing RAA classification was or was not unreasonable or unconstitutional as applied to the plaintiffs' lots. It could not, in a paraphrase of the Cleveland Trust Co. case, supra, "determine the ultimate classification of the area in question as an RE or hotel use by ignoring the other intermediate uses established by the ordinance, and thereby substitute its judgment for that of the City Council of the City of Miami Beach." The Miami Beach Zoning Ordinance provides for six "intermediate uses" between the classifications RAA and RE: the "RA" Estate District, 30,000 sq. ft. lot area per family; "RB" Estate District, 18,000 sq. ft. lot area per family; "RC" Estate District 10,000 sq. ft. lot area per family; "RD" Single-Family District, 6,000 sq. ft. lot area per family; "RDD" Modified Single-Family District permitting two-family dwellings; and "RDE" Restricted Multiple-Family District, permitting two-family dwellings, apartment buildings containing not more than four single-family housekeeping units, and bungalow or house courts. And although there was considerable testimony that the city's comprehensive zoning plan  and its provisions for supplying the necessary public services based on such plan  would be disrupted by a rezoning of the strip to RE (hotel) use (which question, as noted, was not properly before the court) there was nothing in the record to show that any of the foregoing intermediate uses would be unreasonably disruptive of such plan, nor that the comprehensive zoning plan required, absolutely, the retention of the RAA classification to the strip.
But, as heretofore noted, the question of the ultimate classification of the strip  whether to RE use or any of the intermediate uses  is, first of all, a legislative matter; after the local zoning authority has legislated, then the courts may review the reasonableness of its legislation. Just as the courts have "no discretion in determining which election districts should comprise a particular County Commissioner's District", Prince v. State ex rel. Williams, 157 Fla. 103, 25 So.2d 5, 8, they have no discretion in determining the ultimate zoning classification of a given area.
It is my opinion, then, that the lower court erred in decreeing that the plaintiffs' lots should be rezoned to RE use, as an unauthorized exercise by the court of the legislative power conferred by law on the City Council of the City of Miami Beach, and I would reverse that portion of the decree.
On the single question of whether the existing classification of the lots to RAA single-family use was a reasonable exercise of the zoning power, it is my opinion that the lower court did not err in holding such a classification unreasonable, arbitrary and discriminatory. As pointed out by the Chancellor in his decree:
"The evidence is conclusive that while the development of the entire City of Miami Beach has been nothing short of phenomenal and while the entire ocean front in Miami Beach, available for private construction, has been built up, this strip of 86 lots has been in a state of arrested development.
"There are 31 homes in this strip, only 7 of which have been built since 1935 and it appears from the evidence that there is little, if any, market for these properties either for rent or sale as private residences.
*156 "Testimony shows that there are only a very few families in the United States of America with sufficient fortune to keep up a home of the size required to be built on these properties. Testimony of one witness shows that his taxes on a home that he owns was over $8,000.00 per year and that insurance and other costs required him to expend $15,000.00 a year for taxes, insurance, and other costs. That he had to rent the home finally because he could not stand the noise and the invasion of his privacy, and upkeep of the property, and that the most rent that he could get out of the property was $7,200.00 a year, which is less than the taxes on the property."
While this court follows the rule that the courts should not substitute their judgment for that of a local zoning authority when the question is "fairly debatable", in my opinion there is no room for reasonable debate that the restriction of the plaintiffs' property to RAA use is essentially arbitrary and unreasonable.
While the Zoning Ordinance at the time of its adoption by the City of Miami Beach may not have been unreasonable in its application to the property here in question, the reasons for reserving this strip for large estates no longer exist; the property obviously has not developed for the purpose for which it was originally intended by the city planners and, in fact, the city's own witness testified that the winter residents of the caliber which the city sought to attract by zoning the strip as RAA now prefer quieter and more remote areas, such as Golden Beach, for their permanent winter homes. Located as it is on a heavily travelled state highway, with hotels and apartments on both the north and south sides, and with condemnation proceedings by the city already under way to convert two separate portions thereof to public park purposes, it is understandable that such persons find "the strip" undesirable for residential purposes.
I would affirm that portion of the decree of the lower court holding the present classification of the plaintiffs' property to be invalid, and I would reverse that portion of the decree which directs the City Council to rezone it as an RE Estate District. The City Council should, however, be given an opportunity to hold a public hearing within a reasonable time on the question of rezoning the strip to other than RAA use, and I would remand the cause to the lower court with directions to require the City Council to hold such a public hearing within such time as may be fixed by the Chancellor, pending the outcome of which hearing the property should retain its present classification.
HOBSON, J., concurs.