195 So.2d 31 (1967)
The CITY OF MIAMI, a Municipal Corporation of the State of Florida, Appellant,
v.
Sam ZOROVICH, Jerome H. Weinkie and Alan B. Kessler, Appellees.
No. 66-115.
District Court of Appeal of Florida. Third District.
February 7, 1967.
*32 Richard B. Stone, City Atty., Edward J. Fitzpatrick, Asst. City Atty., and Horton & Schwartz, Miami, for appellant.
William W. Charles, Watson & Watson, and Sam Daniels, Miami, for appellees.
Before HENDRY, C.J., and PEARSON and BARKDULL, JJ.
PEARSON, Judge.
The City of Miami appeals a final decree which holds invalid its zoning classification of a plot of land located adjacent to Biscayne Bay. The City was defendant in the trial court, and the appellees, Sam Zorovich, Jerome H. Weinkle, and Alan B. Kessler, were the plaintiffs.
The complaint[1] alleged that the present zoning classification of appellees' property "* * * which prohibits motels is arbitrary, void, unreasonable, discriminatory, unconstitutional and unrealistic, and that this Court on final hearing should declare same invalid, void, unenforceable and unconstitutional as applied to plaintiffs' property, and that the property should either be rezoned R-5 or the specific relief granted to allow the operation of a motel * * *". The final decree, entered after trial, granted the relief as prayed. The chancellor found that the present zoning *33 classification is "unrealistic, unreasonable, arbitrary and void". He further found that it was unconstitutional, and that "it is not debatable, but conclusive, that Plaintiffs' property cannot be used for its highest and best use under zoning classification R-5A."[2]
The City on this appeal has presented a single point:
"WHETHER THE CHANCELLOR ERRED IN DETERMINING UNDER THE APPLICABLE LAW AND EVIDENCE, THE R-5A CLASSIFICATION WAS UNCONSTITUTIONAL AS APPLIED TO THE PLAINTIFFS' PROPERTY."
The burden of appellant's argument under this point is that the evidence in the record does not sustain the chancellor's findings. We conclude that the evidence does not support the decree and we reverse.
The chancellor in his comprehensive final decree has set forth the basic consideration in the case:
"The issue to be determined in this litigation resolves itself, therefore, into a question of whether or not the validity of the ordinance enacted by the Defendant City, classifying the Plaintiffs' land R-5A is fairly debatable where such land is physically located immediately adjacent to a 21 story high-rise apartment building, 400 feet from two existing motels, directly across U.S. 1 from property presently zoned for apartment house use, and fronting on an arterial highway over which vehicles flow to and from Key Biscayne over Rickenbacker Causeway and up and down U.S. 1 between Miami and Key West."
In the same manner, the chancellor has set forth the physical situation:
"The evidence shows that the land in question has 400 feet of frontage on U.S. 1, a four-lane, heavily trafficked main arterial highway, and a depth of approximately 600 feet to Biscayne Bay. The property is identified as "A" on the Exhibit made a part of this opinion, and as "9" (in the lower left-hand corner) of the sketch included in the Tollius opinion.[3] The property abutting Plaintiffs' property to the Southwest also has 400 feet of frontage on U.S. 1, and is approximately the same area size. Situate on this land is a 21 story, high-rise apartment building the erection of which was permitted by the Defendant City through the granting of zoning variances from its R-5A classification."
We have incorporated in this opinion a copy of the chancellor's Exhibit "A" which is referred to in the portion of the opinion just quoted.
*34 
*35 The basic fact, with which a consideration of this appeal must begin, is that the plaintiffs entered the trial court with a zoning classification of R-5A, and the decree gives them a zoning classification of R-5. The present zoning is for multiple family use which permits high-rise apartment houses. The controlling difference between R-5A and R-5 is that under the latter the appellees may build a motel on their property. The practical effect of the decree is to order the city to change the zoning so that appellees may build a motel in an area where the legislative authority has determined that multiple family units are desirable in the development of the overall zoning plan of the city.
The bayfront area with which the court was dealing is unique in the City of Miami. The area was formerly a millionaires' residential row with the homes facing Biscayne Bay and served by Brickell Avenue. This residential section was close to downtown Miami because it was established in the early period of growth. Much of the area has remained zoned for single family residences through the years because most of it was occupied and used for that purpose. With the designation of Brickell Avenue as U.S. Highway number 1 and the construction (at the south end of the strip) of the Rickenbacker Causeway to Key Biscayne, the character of the neighborhood necessarily began to change from single family residences to more liberal uses. The City fought every step of the way. As pointed out by appellees, this final decree is the seventh in a series of final decrees ordering the City to rezone land in the eleven block strip along U.S. 1 (Brickell Avenue) north from Rickenbacker Causeway. Appellees own the fourth tract of land north of the Causeway on the east (bay) side of U.S. 1. The City's witness testified that it was the plan of the City to permit changes of the R-1 classification on the bay side of Brickell Avenue to R-5A, upon the application of the owners. A consistent R-5A classification would maintain the residential character of the area while permitting high-rise apartments.
The law applicable to this appeal was established by the Supreme Court of Florida in Forde v. City of Miami Beach, 146 Fla. 676, 1 So.2d 642 (1941). On that appeal, the Supreme Court reversed a decree of the chancellor dismissing a complaint seeking to enjoin the enforcement of a zoning ordinance. In reaching this holding, the Court set forth the measure by which such causes must be determined; namely:
"* * * In this State, it is no longer questioned that a municipality, acting under legislative authority, may be vested with the power to enact a valid zoning ordinance and that a general attack thereon will ordinarily fail; nor is it questioned that the right of an urban owner to the free use of his property may be regulated by a legitimate exercise of the police power, and when so asserted, fairly and impartially in the interest of the public health, safety, morals or general welfare, the courts will not substitute their judgment for that of the public officials duly authorized in the premises unless it clearly appears that their action has no just foundation in reason and necessity. On the other hand, if the application of the zoning ordinance has the effect of completely depriving an owner of the beneficial use of his property by precluding all uses or the only use, to which it is reasonably adapted, an attack upon the validity of the regulation as applied to the particular property involved, will be sustained." Forde v. City of Miami Beach, supra, 1 So.2d at page 645.
See also Town of Bay Harbor Islands v. Burk, Fla.App. 1959, 114 So.2d 225; Neubauer v. Town of Surfside, Fla.App. 1966, 181 So.2d 707.
*36 We think that two findings of the chancellor[4] must be considered separately. In finding number 3, the chancellor held that "it is not debatable, but conclusive that plaintiff's property cannot be used for its highest and best use under zoning classification R-5A." In findings number 2 and 4, the chancellor held that the present zoning classification (R-5A) is void, unconstitutional, arbitrary and unreasonable.
Finding number 3 is based upon the premise that a property owner is always entitled to the "highest and best use" for his property. This premise is incorrect because it is contrary to the established law of Florida. A zoning ordinance is not invalid merely because it prevents the owner from using the property in the manner which is economically most advantageous. If the rule were otherwise, no zoning could ever stand. As this Court held in Neubauer v. Town of Surfside, Fla.App. 1966, 181 So.2d 707, 709, in determining the sufficiency of a claim that a zoning ordinance reduced the value of the land: "* * * this of itself, is not enough to render the ordinance confiscatory."
The appellees, as plaintiffs, did not establish that the property in question could not be used for a purpose within the R-5A classification. The substance of plaintiffs' witnesses' testimony in this regard was that the use of the property for a motel was the highest and best use from an economic point of view. The rule that the deprivation of the highest economic use of the land is not of itself a predicate for the invalidity of a zoning classification is implicit in the holding of the Supreme Court of Florida in Forde v. City of Miami Beach, which is quoted supra. The Court stated that "* * * if the application of the zoning ordinance has the effect of completely depriving an owner of the beneficial use of his property by precluding all uses or the only use, to which it is reasonably adapted * * *" an attack upon the zoning classification will be sustained. Thus, if it is necessary to show a complete deprivation of the beneficial use, it stands to reason that the deprivation of one use, even though the most economically fruitful use, will not be sufficient. See State ex rel. Townsend v. Farrey, 133 Fla. 15, 182 So. 448 (1938). See also cases cited at page 6-11, Rathkopf, The Law of Zoning and Planning, 3rd Ed., Vol. I.
Findings numbered 2 and 4 held that the present zoning classification is void, unconstitutional, arbitrary and unreasonable. The apparent ground for this holding is the chancellor's conclusion that the zoning classification had no relation to the public health, safety, morals or general welfare. As a predicate for this finding, the chancellor correctly set forth the rule which requires that every zoning regulation must have a substantial relation to public health, safety, morals and general welfare.[5]
*37 The plaintiffs' witnesses do no more than disagree with the City Commission as to the propriety of a distinction between an apartment house and a motel. Plaintiffs' witnesses expressed their informed opinion that the R-5A zoning was not "reasonable" and that an R-5 classification would be the "best" zoning. The testimony of these witnesses, and others, revealed, as everyone knows, that there is a vast distinction between a high-rise apartment house and a motel-bar-restaurant with its constant traffic, its signs, its intensely garish and commercial aura. The character of an area in which a motel is permitted is completely different from one confined to residential uses. The City Commission, in making the R-5A classification, did no more than exercise its legislative judgment that the general welfare would be best served by precluding the existence of a motel row and preserving the residential character of the area. See Pierro v. Baxendale, 20 N.J. 17, 118 A.2d 401 (1955).
It has long been settled in Florida that zoning regulations which promote the integrity of a neighborhood and preserve its residential character are related to the general welfare of the community and are valid exercises of the legislative power. See Parking Facilities, Inc. v. City of Miami Beach, Fla. 1956, 88 So.2d 141; City of Miami Beach v. Wiesen, Fla. 1956, 86 So.2d 442. Cf. City of Miami Beach v. Ocean & Inland Co., 147 Fla. 480, 3 So.2d 364 (1941). The rule obviously applies here.
Reversed.
BARKDULL, Judge (specially concurring).
I concur with the majority opinion authored by Judge Pearson in finding upon the record on appeal that the appellees were not entitled to a zoning which would permit a motel to be erected on the parcel involved in these proceedings. However, it does appear from this record that the appellant City is under a duty to make a comprehensive determination as to how the area abutting Brickell Avenue, between Southwest 15th Road to Southwest 32nd Road [Vizcaya], should be developed.
There have been several decisions of the appellate courts of this State holding that property in this area is no longer suitable for single family residences, to wit: City of Miami v. Ross, Fla. 1954, 76 So.2d 152; Tollius v. City of Miami, Fla. 1957, 96 So.2d 122; Weintraub v. Field, Fla.App. 1962, 143 So.2d 54.
The opinion in City of Miami v. Ross, supra, was handed down by the Supreme Court of Florida on August 31, 1954. The City, in attempting to defeat a summary final decree in this action, filed an affidavit by the Director of its Planning and Zoning Board admitting that the property in the area was no longer suitable for single family residence, and that the City "was presently engaged in working out an areawide zoning for the entire district". The following by Mr. Justice Roberts, is found in City of Miami v. Ross, supra:
* * * * * *
"[1] It appears that the City has been considering for some time the advisability of rezoning the particular district in question. And, as noted above, the City admitted that `the character of the area involved herein has changed substantially so that the captioned land is no longer suitable for, nor adaptable to, single family residences.' Under such circumstances, the power of the City to rezone a particular area because of a change in the character of the neighborhood is no longer a discretionary matter; it becomes its duty to do so. And it follows that the judicial processes may be directed to compelling the performance of such duty. [Emphasis added.]
* * * * * *
"* * * Here, the conditions which render the plaintiffs' property unsuitable for residential use are general and applicable to the entire district in which *38 their property is located. * * * they showed no special hardship peculiar to their own property; they showed only that the general condition of the entire area had changed so as to require a fundamental revision of the zoning ordinance. This is a legislative matter, which should be remedied by a revision of the general zoning law and not by granting a special privilege to a single owner. See Arverne Bay Const. Co. v. Thatcher, 278 N.Y. 222, 15 N.E.2d 587, 117 A.L.R. 1110; Brackett v. Board of Appeal of Building Dept. of City of Boston, 311 Mass. 52, 39 N.E.2d 956; Brandon v. Board of Com'rs of Town of Montclair, 124 N.J.L. 135, 11 A.2d 304, affirmed 125 N.J.L. 367, 15 A.2d 598; Rommell v. Walsh, 127 Conn. 272, 16 A.2d 483. And, in the face of the City's announced intention to rezone the entire district, the provision of the decree that, upon the failure of the City to rezone, the plaintiffs should be allowed to make any use of their property permitted in R-3 districts, was, in effect, in the circumstances here present, "spot zoning" by judicial fiat  and this, in our opinion, neither the courts nor the City's zoning officials can do. See Yokley, Zoning Law and Practice, 2d Ed., Sec. 90 et seq., page 202. * * *" [Emphasis added.]
* * * * * *
Although the Supreme Court, in this opinion, ultimately permitted the R-3 use on the particular property involved, it did not recede from the announced principles of applicable zoning law. Notwithstanding the indication by the City in 1954 that they were "engaged in working out an areawide zoning plan for the entire district", almost 12 years have elapsed and the City has not reexamined and rezoned the entire area. The City has rezoned certain of the property for apartments, certain of it for high rise residential apartments, and several parcels for motels. As is clear by examination of the court's Exhibit A, which is made a part of the majority opinion, the City [by failure to consider this entire area] has been guilty of "spot zoning". It has "motel" use next to residential and it has "high rise" next to residential. The property owners in this district and the citizens of the City of Miami are entitled to know what type of zoning regulations will be effective for this entire area.
As indicated in the majority opinion, this is some of the most desirable property for redevelopment remaining along the bayfront in the City of Miami, and its development [whether it be good or bad, uniform or spotty] will undoubtedly have a great impact on the welfare of the City of Miami. It is an area that must change from its predominantly single family residence, large estate use. How it is to change will be determined in the collective wisdom of the City Commission of the City of Miami. It may be developed as a scenic, high class residential, multiple family use, catering to more or less permanent residents; or it may be developed for transient tourist accommodations. With either type of development there are benefits and detriments but, notwithstanding whatever they may be, the development should be uniform in this area and should not be left to be "spot zoned" as the City has done for the past twelve years. As stated in City of Miami v. Ross, supra, "the general condition of the entire area had changed so as to require a fundamental revision of the zoning ordinance.", and "the power of the City to rezone * * * is no longer a discretionary matter; it becomes its duty to do so."
The City has failed to keep faith with the courts of this State; has failed to respond to its duty to rezone; and it is time it demonstrated its faith as it indicated it was doing in 1954,[1] by reexamining the entire area and reclassifying the property within this use district in the best interests of public health, safety, morals and welfare of the community.
NOTES
[1] Paragraph number 10 of the complaint is as follows:

"That the R-5A classification of the Plaintiff's property which prohibits motels is arbitrary, void, unreasonable, discriminatory, unconstitutional and unrealistic, and that this Court on final hearing should declare same invalid, void, unenforceable and unconstitutional as applied to Plaintiff's property, and that the property, should either be rezoned R-5 or the specific relief granted to allow the operation of a motel should be adjudicated; that the present zoning imposed on Plaintiff's property does not bear any substantial relationship to public health, safety, morals and welfare of the community, and said restrictions are not necessary for public health, safety, morals or welfare, and said restrictions exceed the boundary of necessity and are an invasion of the constitutional rights of the property owner therein, in that a change in the character of the neighborhood has occurred and that two motels are operating successfully in the immediate vicinity; that both of these motels were erected pursuant to Court Order."
[2] The chancellor's findings are as follows:

"This Court finds from careful consideration of the evidence and testimony in this case, the following:
"1. The Plaintiffs exhausted their administrative remedies prior to instituting these proceedings, and the Court has jurisdiction of the subject matter and the parties.
"2. The Plaintiffs have sustained the burden of proving that the zoning classification R-5A, as presently applied to their property, is unrealistic, unreasonable, arbitrary and void. It violates the Plaintiffs' rights guaranteed to them by Section 12 of the Declaration of Rights of the Florida Constitution [F.S.A.], that they shall not be deprived of their property without due proces of law and just compensation.
"3. That it is not debatable, but conclusive, that Plaintiffs' property cannot be used for its highest and best use under zoning classification R-5A.
"4. That ordinance No. 6871 of the Defendant City, as applied to Plaintiffs' property, restricting its use to that of high-rise apartments, is void and unconstitutional, arbitrary and unreasonable."
[3] Tollius v. City of Miami, Fla. 1957, 96 So.2d 122, 123.
[4] See footnote 2, supra.
[5] The Supreme Court of Florida in City of Miami Beach v. Lachman, Fla. 1953, 71 So.2d 148, 150, said: "While Village of Euclid, Ohio v. Amber Realty Company, [272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016] approved the zoning and segregation of private property into residential, business, and industrial districts, it was as equally emphatic that if such zoning did not have some substantial relation to the public health, safety, morals, and general welfare, it would be held to be arbitrary, unreasonable, and unconstitutional. There is no warrant whatever in this, or in any other case, to support the thesis that zoning boards are infallible and that any kind of a zoning proposition they promulgate will be upheld. In other words, zoning boards are in the same category as all other administrative boards. Their ordinances and regulations will be given serious consideration and their judgments great weight, but where it is conclusively shown that they deprive one of his property without due process or otherwise infringe on State or Federal constitutional guarantees unreasonably, such ordinances and regulations cannot be said to be reasonably debatable and will be stricken down."
[1] See and compare: McNayr v. State ex rel. Dupont Plaza Center, Inc., Fla. 1964, 166 So.2d 142, at page 145.