223 So.2d 344 (1969)
COUNTY OF BREVARD, Appellant,
v.
William H. WOODHAM, Appellee.
No. 2075.
District Court of Appeal of Florida. Fourth District.
May 29, 1969.
Rehearing Denied June 25, 1969.
*346 Leon Stromire and Robert T. Westman, of Stromire, Westman & McCauley, Cocoa, for appellant.
James R. Dressler, of Dressler & Thoburn, Cocoa Beach, for appellee.
REED, Judge.
This is an appeal from a final decree of the Circuit Court for Brevard County, Florida, which enjoined that county from enforcing against the plaintiff's property a single family residential zoning classification imposed by the county's comprehensive zoning ordinance.
The plaintiff, William H. Woodham, filed a complaint on 2 February 1967 in which he alleged that he owned three lots in Brevard County located on Merritt Island. These lots were zoned by the defendant County for single family residential use (RU-1). The lots are not suited for residential purposes and the only use for which they are adaptable is business. The zoning ordinance as applied to the plaintiff's property destroys the greater part of the value of the lots and is, therefore, confiscatory. The complaint also alleges that the ordinance has no reasonable relation to the police power and that the continued enforcement of the ordinance constitutes a confiscation of the plaintiff's property.
Brevard County filed an answer which denied most of the material averments in the complaint. The answer did admit, however, that the property in question was zoned "RU-1" for single family residential use.
The cause was tried before the chancellor on 5 December 1967. On 5 February 1968 the chancellor entered a final judgment which ordered:
"* * * [T]hat the defendant and its agencies are hereby permanently enjoined from enforcing any zoning regulation on plaintiff's property more restrictive than neighborhood retail business (BU-1)."
It is from this final judgment that the defendant appeals.
Basically, the only point which is presented by this appeal is whether or not the trial court erred in holding that the present zoning classification of RU-1 as applied to the plaintiff's property was void as unconstitutional.
The plaintiff's land is situated south of Cone Road and on State Road 3, which *347 runs approximately north and south through south Merritt Island. Its frontage on State Road 3 is 247.46 feet. Its depth varies from 70.63 feet to 220.87 feet.
Comprehensive zoning regulations were adopted by Brevard County on 22 May 1958 pursuant to Chapter 57-1162, Laws of Fla. 1957. At that time, the plaintiff's property and all immediately surrounding properties were zoned for single family residential purposes. At the time the zoning ordinance was adopted the population on south Merritt Island was sparse. Virtually the only commercial use of property south of Cone Road along State Road 3 was the Pooley Grocery Store which was operated on the land in question and the Ramsey Garage which was approximately one-half mile south of the Pooley Grocery Store. These commercial uses were continued as non-conforming uses under Section 18 of the zoning ordinance.
The plaintiff began to operate the Pooley Grocery Store in 1962. His initial operation was under a lease from Mr. Pooley. The plaintiff took title to the property in March of 1964. After he bought the property, the plaintiff made several attempts to rezone the property to BU-1. The plaintiff's first attempt at rezoning was in July of 1964. This attempt and each attempt thereafter was met with a denial by the county commissioners of Brevard County, Florida. His intention at the time he applied for the rezoning was to tear down the store on his property and to build thereon a grocery store, a barber shop and a gasoline station.
Since the zoning was established on south Merritt Island in 1958, the property south of Cone Road has continued to develop as a single family residential area. However, a parcel one-half mile south of plaintiff's property has been rezoned from RU-1 to BU-1 (neighborhood retail). The property which was rezoned BU-1 runs 600 feet along State Road 3 on both the east and west sides of the street and has a depth on each side of about 200 feet.
State Road 3 is a two-lane, hilly road. The speed limit is 45. The traffic is heavy between 3:30 and 6:30 p.m.
O.D. Peavy, the director of the Brevard County Zoning Commission, testified that the plaintiff's property was not initially zoned for commercial purposes because it was desired to have the entire area develop as a residential area. He also testified that in 1958 the population in the area was sparse and that it was unnecessary to provide at that time for commercial use. An expert real estate appraiser and Mr. Peavy both testified that rezoning plaintiff's property to BU-1 would adversely affect the surrounding residential property.
Section 12 of the Brevard County zoning ordinance provides that in a BU-1 district property may be used for automobile storage, pool rooms, self-service type hand laundries with drive-in facilities, restaurants and cafeterias, and bars after a public hearing. These are just several of the many retail business uses that may function in a BU-1 district.
The constitutional validity of a zoning ordinance depends upon its relationship to the public health, safety, morals, and welfare. If the zoning ordinance has a substantial relationship to any one of these objectives it may be constitutionally valid, that is, within the police power of the legislative body. City of Miami Beach v. Weiss, Fla. 1969, 217 So.2d 836; City of Miami v. Rosen, 1942, 151 Fla. 677, 10 So.2d 307; City of Miami Beach v. 8701 Collins Ave., Fla. 1954, 77 So.2d 428. A zoning ordinance, however, cannot be confiscatory. By this it is meant that the ordinance cannot deprive an owner of the beneficial use of his property by precluding all uses to which the property might be put or the only use to which it is reasonably adaptable. Forde v. City of Miami Beach, 1941, 146 Fla. 676, 1 So.2d 642.
It is not necessary to the constitutional validity of an ordinance that it permit the highest and best use of a particular piece of property. In City of Miami *348 v. Zorovich, Fla.App. 1967, 195 So.2d 31, cert. den. Fla. 1967, 201 So.2d 554, the Third District held:
"A zoning ordinance is not invalid merely because it prevents the owner from using the property in the manner which is economically most advantageous. If the rule were otherwise, no zoning could ever stand."
Please also see the recent case of City of St. Petersburg v. Aikin, Fla. 1968, 217 So.2d 315. There the Florida Supreme Court points out that the mere fact that the land owner is proposing to make a reasonable use of his property and one which is consistent with the public welfare does not permit the conclusion that the existing zoning which precludes the proposed use is constitutionally defective.
As already mentioned, the general object of zoning is to advance the public health, safety and general welfare. More specifically, however, it has been held that zoning regulations may be employed to promote the integrity of a neighborhood and preserve its residential character, City of Miami v. Zorovich, supra. It has also been held that zoning may be employed to protect the economic value of existing uses and to avoid serious traffic congestion. City of Miami Beach v. Lachman, Fla. 1953, 71 So.2d 148.
An ordinance is presumed to be valid. Therefore, the burden of proof of demonstrating the invalidity of a zoning ordinance is upon the person who attacks the ordinance. City of St. Petersburg v. Aikin, supra.
Because zoning is a legislative function, the discretion which might otherwise be reposed in reviewing courts is somewhat limited. Where the validity of a zoning ordinance is fairly debatable, a court may not substitute its judgment for that of the zoning authorities. City of Miami Beach v. Weiss, supra; City of Miami v. Rosen, supra; City of Miami Beach v. Lachman, supra; City of Miami Beach v. Wiesen, Fla. 1956, 86 So.2d 442; and Friedland v. City of Hollywood, Fla. App. 1961, 130 So.2d 306. In City of Miami Beach v. Weiss the Florida Supreme Court said:
"On the merits of the controversy, the record here conclusively establishes that the zoning of the lands under consideration is palpably arbitrary and unreasonable and has no reasonable debatable relation to the public health, safety or general welfare, and that it should be rezoned * * *."
Another good statement of the policy to be followed in reviewing zoning ordinances is found in the case of City of Miami Beach v. Wiesen, supra, where the court at page 445 of 86 So.2d said:
"Recognizing the fundamental premise that there must be a line somewhere, the courts should be highly respectful of the decision of the legislative body which, under the law, is vested with the power and charged with the duty of zoning. The courts should tread lightly in this field and then only where the actions of the City Council are so unreasonable and unjustified as to amount to confiscation of property."
In applying these principles to the present case, we conclude that the chancellor misconceived the legal effect of the evidence when he held that the RU-1 zoning does not bear a substantial relationship to the public welfare. Zoning for the purpose of maintaining the integrity of a residential area does relate to the public welfare. City of Miami v. Zorovich, supra. It is essential for cities and counties to provide areas in which their residents may feel free to build homes and make the financial and other sacrifices that go into the development of a home without the fear of being deprived of a large measure of their investment or of the enjoyment of their homes by the out-croppings of commercial developments. The purpose of including the plaintiff's land in the residential zoning classification was to preserve and *349 promote the integrity of the surrounding land as a residential area. The evidence in the present case clearly showed that to rezone the plaintiff's parcel for use as BU-1 property would lead to a deterioration of the surrounding residential properties. The effect of the chancellor's decree is to create a small area of commercial zoning in an area of single family residences. This is spot zoning, the practice of which is condemned by all authorities on zoning. See Parking Facilities v. City of Miami Beach, Fla. 1956, 88 So.2d 141.
The trial court's judgment cannot be sustained on the theory that the RU-1 zoning is confiscatory as it applies to the plaintiff's property. The plaintiff himself testified that the property with its present zoning is worth what he paid for it. Other evidence shows that the plaintiff's property can be used for single family residential lots and will have a value for such use. In these circumstances, the plaintiff who purchased the property in the face of the zoning ordinance, has no basis for claiming that the ordinance is confiscatory. See City of Miami Beach v. Greater Miami Hebrew Academy, Fla.App. 1958, 108 So.2d 50.
The trial court found that there was no provision made for commercial zoning on south Merritt Island when the zoning ordinance was initially enacted. This is supported by the evidence, but it does not warrant the conclusion that the zoning ordinance was void as unconstitutional in its application to the plaintiff's property. The evidence without dispute shows that the area on south Merritt Island was sparsely populated at the time the zoning ordinance was enacted in May of 1958. There was testimony that residents in the area were consulted and they were opposed to the area being used for anything except residential purposes. Furthermore, the Pooley Grocery Store was permitted to continue as a non-conforming use under Section 18 of the zoning ordinance even though it was zoned as RU-1. The effect of the zoning ordinance was to provide a large area in which citizens could develop homes with some reasonable degree of security and protection from inconsistent uses. Thus, the failure to provide for a commercial district at the time the zoning ordinance was enacted can hardly support a conclusion that the zoning ordinance in its application to the plaintiff's property was not substantially related to public welfare and was void from the beginning.
The trial court in its final decree took note of the fact that the property south of the plaintiff's property was changed from RU-1 to BU-1. The plaintiff was contending at the time of the final hearing that the zoning ordinance was void at the time it was enacted in 1958. The zoning change referred to took place well after 1958; therefore, it has no relevancy to the validity of the zoning ordinance as it applied to the plaintiff's property in 1958. Futhermore, we do not believe that the existence of the tract for commercial zoning one-half mile south of the plaintiff is sufficient competent substantial evidence to remove the validity of the zoning ordinance as it now applies to the plaintiff's property from the area of a fairly debatable proposition. The fairly debatable rule is particularly pertinent to a determination of the boundaries between use districts. See City of Miami Beach v. Wiesen, supra, where the court stated:
"If the fairly debatable rule is a sound one, and we have so held, there is no situation in the field of zoning in which it is more applicable than that involving the decision of where the dividing line between use districts should be * * *."
Finally, the trial court found that the highest and best use of the plaintiff's property was for neighborhood retail business. In view of the surrounding residential uses such a fact does not compel a conclusion that residential zoning on the plaintiff's property is unconstitutional. See City of Miami v. Zorovich, supra.
*350 In summary we conclude that the plaintiff failed to demonstrate that the ordinance in its application to his property was confiscatory or had no reasonably debatable relationship to public welfare. The validity of the ordinance was at least fairly debatable, and the trial court erred in substituting his judgment for that of the zoning authority which in this case was the County Commission of Brevard County, Florida.
The judgment appealed from is reversed.
Reversed.
CROSS and McCAIN, JJ., concur.