REGAN, Judge.
Plaintiff, Seymour J. Stewart, the buyer, instituted this action of redhibition[1] against defendant, Owesen & Company, Inc., the seller, to recover the sum of $125 representing the purchase price paid on July 3rd, 1953, for a used “Philco York Console Model ¿4 Ton Air Conditioning Unit” which plaintiff insists was defective [2] before the date of the sale, since the vice [3] made its appearance within three days after the sale and therefore, the legal presumption is that it existed before the sale[4]. Plaintiff asserts that it has offered to return the unit to the defendant in exchange for the purchase price thereof which tender has been rejected.
Defendant pleaded the exceptions of “no cause or right of action” which it ultimately waived and then answered admitting that plaintiff had offered to return the unit in exchange for the purchase price thereof, which offer was rejected, but denied that the unit was defective at the time of the sale.
From a judgment in favor of defendant dismissing plaintiff’s suit, he has prosecuted this appeal.
*120 The record reveals that on July 3rd, 1953, plaintiff, through his employee, Walter Lark, purchased the air conditioning unit from the defendant and simultaneously sold it to the United Tourist Court which, it appears, was owned and operated by Anthony J. Dodt and Joseph Drolla [5]. An employee of the United Tourist Court was instructed to drive their truck to defendant’s office and pick up the unit, which was done on July 6th, 1953; however, the unit was operated in defendant’s business establishment, in the presence of the driver, before it was placed in the truck to be transported to the tourist court.
On July 8th, either Drolla or Dodt called the plaintiff to adyise him that a “tube was popped” and they wanted that part of the unit repaired before attempting to operate it. Plaintiff then informed the defendant of the foregoing difficulty and on the same day it sent Victor Sommers, a mechanic, employed by the Dependable Refrigeration Service to repair the unit. He testified on behalf of the plaintiff that “the return line going to the compressor had broken due to the fact * * * that the unit should have been bolted down in shipment.” He repaired the “broken line” and then when he was recharging the unit “with freon gas the motor stopped.”- * * * “It was the multibreaker that had tripped. * * * In other words, they had - one line that was overloaded. They should have had separate circuits. * * * I told him that * * * when he got it in place, that I would come back and check it over completely.” In conclusion Sommers asserted that when he departed from the tourist court, that evening, the motor was not “burnt out.”
Joseph F. Trahan, a mechanic, also employed by the Dependable Refrigeration Service, testified on behalf of plaintiff, that béfore the defendant sold the unit to plaintiff, he had repaired and serviced it and it “was putting out according to specifications” ; he knew, as Sommers did, that the tourist court was not properly wired for the unit. Sometime in August he received a call from the United Tourist Court and when he arrived there he found “the motor was burned up and it wasn’t running.”
Walter Lark, an employee of plaintiff, testified that he had negotiated the purchase of the unit for the plaintiff and that he was thoroughly familiar with the details of the transaction. He said he purchased it on July 3, 1953, and sold it to the United Tourist Court, who had an employee of theirs pick the unit up on July 6, 1953; .that, on July 13th, Dodt reported to him that the Dependable Refrigeration Service mechanic had been there on July 8th in response to his request, and when he attempted to operate the unit it would “kick the multibreaker,” so he suggested that the unit; be moved to a “fused circuit.” On August 19th, he received another telephone call from Dodt, who informed him that he had connected the unit to a “fused circuit” but that it was blowing the “fuses” after two or three minutes of operation. In conclusion Lark testified, that it was not until September 4th, 1953, when he informed the defendant “that the motor was burnt out.”
John Key, the president of the defendant company, testified that the unit was checked and serviced by the Dependable Refrigeration Service before it was sold to the plaintiff and that it was operated in the presence of the driver from the United Tourist Court, who called for the unit on July 6th, 1953.
Wassyl Zebrick, an employee of the defendant company, testified that he “saw the unit running” before it was picked up by the driver for the United Tourist Court.
The only question posed for our consideration by virtue of the foregoing pleadings and evidence is one of fact, and that is, was the motor “burned out” before the sale to the plaintiff so as to permit him to successfully maintain an action of redhibition *121 in conformity with the rationale expressed in LSA-C.C. Articles 2520 and 2530?
In a relatively recent case[6], we said:
“There exists in every sale consummated under the laws of this State, the seller’s zvarranty against hidden defects in connection with the article or merchandise sold, or its redhibitory vices. The seller’s warranty is an implied part of the contract which need not be expressed. See Civil Code Article 2476. Nelson v. M. C. M. Truck Lines, 209 La. 582, 25 So.2d 236. This warranty originated by virtue of a philosophy which is the antithesis of the common law’s classic doctrine of caveat emptor, which incidentally has never prevailed in this State. Where this implied warranty is breached, the action of redhibition permits a vendee to resist payment of the purchase price or to recover the price already paid.
“Article 2520 of the Louisiana Civil Code reads: ‘Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.’
“The fundamental effect of redhibition is the complete rescission of the sale of the property which the vendee alleges was defective before the date of the sale. However, Civil Code, Art. 2530 expressly places the burden of proof on the buyer to establish that the vice existed before the sale to him.
“The same article presumes the existence of the ‘vice’ before the sale, if it ‘has made its appearance within three days immediately following the sale.’ ”
In the instant case plaintiff has not introduced one scintilla of evidence to establish, as a fact, that the air conditioning unit’s motor was not operating at the time of the sale, or the delivery thereof, or that the alleged “burned out” motor made its appearance within three days following the sale. In fact, the only expert testimony appearing in the record, adduced from witnesses [7] called by the plaintiff, indicates that the air conditioning unit’s motor was operating several weeks after it was in the possession of the United Tourist Court and that it ceased operating only because the electric circuit to which the unit was attached was “overloaded” with other appliances which caused the multibreaker “to trip” or the fuses to “blow out.”
The president of the defendant company and one of its employees both testified emphatically that the motor was operating before it was delivered to the driver of the United Tourist Court’s truck. The whole context of the record leads us to the inevitable conclusion that their statements were entirely true.
Plaintiff has not successfully borne the burden of proof imposed on the buyer by virtue of the provisions of LSA-Civil Code, Article 2530, nor did he relieve himself of that burden of proof and acquire the benefit of a presumption of the existence of a vice in the motor by proving that is was “burned out” within three days immediately following the sale.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.

. LSA-C.C. Art. 2520 provides as follows: “Kedhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.”

. LSA-C.C. Art. 2529 provides as follows: “A declaration made in good faith by the seller, that the thing sold has some quality which it is found not to have, gives rise to a redhibition, if this quality was the principal motive for making the purchase.”

. Plaintiff contends that the motor was “burned out” before the sale.

. LSA-C.C. Art. 2530 provides as follows : “The buyer who institutes the redhibitory action, must prove that the vice existed before the sale was made to him. If the vice has made its appearance within three days immediately following the sale, it is presumed to have existed before the sale.”

. They have never paid the plaintiff for the air-conditioning unit.

. Womack v. Lafayette Furniture Co., Inc., 1951, 50 So.2d 843, 845.

. Victor Sommers and Joseph F. Trahan.