**ZOROVICH, et al v. CITY OF MIAMI.**
No. 65-C-6213.

Circuit Court, Dade County.
September 30, 1965.

44

William W. Charles and Watson & Watson, all of Miami, for plaintiffs.

Edward J. Fitzpatrick, Assistant City Attorney, for defendant.

JAMES LAWRENCE KING, Circuit Judge.

The plaintiffs assert the position, by their pleadings and proof, that the present zoning classification R-5A, as established by the city of Miami, on their property is arbitrary, void, discriminatory, confiscatory, oppressive and unconstitutional, having no relationship whatsoever to the public health, safety, morals, or general welfare of the community.

Conversely, the defendant city maintains that the present zoning is a reasonable one, and that it was a fairly debatable question whether or not the property is adequately and reasonably usable for the purposes for which it is presently zoned, stating that there is a definite relationship between the zoning of the subject land and the public health, safety and welfare.

Plaintiffs, at the final hearing in this cause, established without contradiction that they had exhausted their administrative remedies seeking a change in zoning classification from R-5A to R-5 —

permitting the construction of a two or three story motel upon their property. Under the existing zoning classification, the plaintiffs may erect an apartment building to a height of thirteen stories but are prohibited from building a motel of two or three stories.

In order to clearly understand the prime issue in this case, it is appropriate to record, as a part of this opinion, court exhibit A, showing the location of the property in question, the nature and zoning classification of adjacent and surrounding property, as well as the system of streets and highways directly in front of plaintiffs' premises. The city's zoning classification of property in the immediate area of the property constituting the subject matter of this suit, has, from time to time in the past, been brought to the court for judicial consideration. The decisions rendered by the trial and appellate tribunals of this state bear directly upon the validity vel non of the city's ordinance as applied to the plaintiffs' property. One such decision, Tollius v. City of Miami, Fla., 96 So. 2d 122, contains an excellent diagram of the property here involved. The Tollius opinion, containing the sketch of the property in the area, is simply supplemented and brought to date by "exhibit A."

The evidence shows that the land in question has 400 feet of frontage on U.S. 1, a four-lane, heavily trafficked main arterial highway, and a depth of approximately 600 feet to Biscayne Bay. The property is identified as "A" on the exhibit made a part of this opinion, and as "9" (in the lower left-hand corner) of the sketch included in the Tollius opinion. The property abutting plaintiffs' property to the southwest also has 400 feet of frontage on U.S. 1, and is approximately the same area size. Situate on this land is a 21 story, high-rise apartment building the erection of which was permitted by the defendant city through the granting of zoning variances from its R-5A classification. This property is known as the Brickell Town House and identified as "B" on the court's exhibit. Immediately southwest of this property (and 400 feet from the plaintiffs' property) is located the Colonial Terrace Motel. The Supreme Court of Florida in City of Miami v. Hammock Homes, Inc., Fla., 57 So. 2d 459, held that defendant's zoning classification of this property (identified as "C," court's exhibit; "2" Tollius opinion) was void as being unreasonable, oppressive and unconstitutional. Of like result was the holding in the Tollius case, supra, concerning the property designated on the Supreme Court diagram by "1" and on the court's diagram by "D". In the Tollius opinion, the Supreme Court held that the changed circumstances existing at the Rickenbacker Causeway entrance to U.S. 1, and the similarity of the facts to those in the Hammock Homes case, justified the holding that single family zoning was void for this area.

The property immediately southwest of the Brickell Town House, fronting on U.S. 1 and adjacent to the Rickenbacker Causeway, (designated by "3" in the Tollius opinion) was ordered rezoned by Judge Stanley Milledge of the circuit court of this county, in chancery case no. 133,160, and is the site of the future location of a Howard Johnson restaurant. Continuing southwesterly to the property located directly across the Rickenbacker Causeway entrance, is the Field property (identified as "F", court's exhibit), presently zoned R-5 in accordance with the opinion of the appellate court in Weintraub v. Field, Fla., 143 So. 2d 54.

The city's witnesses testified at final hearing that the property directly across U.S. 1 from the plaintiffs' property was changed from zoning classification R-1 to R-3A, as the result of a decision of the circuit court of this county, requiring rezoning of the property to a reasonable use (R p. 122). These same witnesses testified on cross-examination that all of the property so designated as R-3A by the defendant is platted into 50 foot lots, and that the owner of a 50 foot lot could not build upon his property under zoning classification R-3A, which contains a 10,000 square foot minimum lot size for construction (R p. 124-125).

The property to the immediate northeast of plaintiffs' property, extending all the way to Southeast 15th Road, is presently zoned by the city as R-1, except for 400 feet designated on the court's exhibit as "E" next to the proposed teachers' high-rise. The existing zoning classification is of little significance or materiality, however, since the defendant's witnesses all testified that this property should all be rezoned to at least R-5A, upon application of the owners thereof. The property north of Southeast 15th Road, fronting on Biscayne Bay, is presently zoned R-5 (the classification plaintiffs here seek).

Lastly, the evidence discloses that the city has zoned approximately two miles of bayfront property as R-5, while zoning only these four parcels (as identified on court's exhibit A), or 1400 feet of property, R-5A. The Brickell Town House is constructed on approximately 25 percent of the total R-5A zoning contained within the city of Miami, the plaintiffs' property consists of approximately 25 percent of the said R-5A zoning, with the balance divided between the property designated "E" on court's exhibit A, located to the northeast of the subject property, and the property immediately adjacent to Rickenbacker Causeway. The witnesses testified that the Brickell Town House is the only property classified in the city of Miami with R-5A classification that has been developed, and it was developed by the granting of variances permitting its construction to a total height of 21 stories, or 8 more than the maxi-

mum number of stories permitted under the zoning classification.

The issue to be determined in this litigation resolves itself, therefore, into a question of whether or not the validity of the ordinance enacted by the city, classifying the plaintiffs' land R-5A, is fairly debatable where such land is physically located immediately adjacent to a 21 story high-rise apartment building, 400 feet from two existing motels, directly across U.S. 1 from property presently zoned for apartment house use, and fronting on an arterial highway over which vehicles flow to and from Key Biscayne over Rickenbacker Causeway and up and down U.S. 1 between Miami and Key West. The court finds the issue of the restrictions placed by the city on the use of the plaintiffs' property to not be fairly debatable. The evidence, when fully considered, conclusively establishes that the R-5A zoning restriction established by city ordinance on plaintiffs' property is arbitrary, unreasonable, confiscatory, void and unconstitutional.

It is the law of this jurisdiction that zoning restrictions on private property must be kept within limits of necessity for public welfare or they will be recognized as an unlawful taking. Lawley v. Town of Golfview, Fla., 174 So. 2d 767. An owner of property in this state may devote his land to any legitimate use under rights guaranteed him by section 12 of the Declaration of Rights of the Florida constitution, and a municipality may not, under the guise of the police power, impose unnecessary or unreasonable restrictions on that use. Watson v. Mayflower Property, Inc., Fla., 177 So. 2d 355; 35 Fla. Jur., Zoning Laws, section 10.

In the Mayflower decision Chief Judge Shannon of the Second District Court of Appeal said at page 359 — "To be valid, a zoning ordinance must have a substantial relation to the public health, safety morals or general welfare. The courts usually will hold a zoning ordinance invalid when it clearly appears that the restrictions are arbitrary and unreasonable and have no substantial relation to the health, safety, morals or the general welfare."

Aside from the characteristics of the land, and the land around it, apparent from the sketch made a part of this opinion, there was abundant testimony that the zoning restrictions imposed upon the plaintiffs' land, prohibiting the construction of a three story motel, had absolutely no relationship to the public health, safety, morals or the general welfare when considered in conjunction with the permitted construction of 21 story high-rise apartment buildings and other motels. Three qualified expert witnesses called to testify by the plaintiffs agreed that the R-5A classification as applied to the subject property did not bear any relationship to the public health, safety, or welfare.

The director of the department of planning of the city of Miami testified that the relationship between the existing zoning classification on the plaintiffs' property and the public health, safety, morals or general welfare was one of beauty of the area, (R p. 120). In this regard, he was of the opinion that the subject property should be zoned for a public park, or that the next best use would be that of R-1, or single family residence (R p. 117).

Considerable disparity exists between this opinion and the witness' conclusion that it is reasonable for the defendant to place an R-5A classification upon plaintiffs' property — which permits construction, with variances, of a 21 story apartment building.

A private planning consultant and former chief of the long-range planning division of the city of Miami planning board was also called as an expert witness on behalf of the defendant city. This witness testifed (R p. 182-183) that the existing zoning of R-5A on plaintiffs' property had no relationship to the public health, safety, morals or general welfare. He was of the opinion, as were all of the defendant's witnesses, that the numerous court decisions in City of Miami v. Hammock Homes, Inc., 57 So. 2d 459, Tollius v. City of Miami, 96 So. 2d 120, and Weintraub v. Field, 143 So. 2d 54, affecting and changing the zoning classifications of the properties identified on the sketch made a part of this opinion as "C", "D" and "F," were erroneous.

The assistant planning director of the Miami planning department testified that all R-5A zoning classifcations (being the four parcels identified on the sketch appended hereto), constituted "spot zoning" (R p. 214-215), which all informed zoning experts agree is poor planning and should be avoided. This witness testified that the city's planning department had not recommended the R-3 classification on the property directly across U.S. 1 from the plaintiffs' property, but had instead, recommended R-CA classification, which permits, among other uses, offices for the conduct of real estate, mortgage financing, insurance, offices of architects, attorneys, accountants, tax consultants, engineers, dental or medical (including clinics) or offices of other professions or businesses not involving sale or handling of merchandise on the premises.

The court is aware of the opinion of the Second District Court of Appeal in Lawley v. Town of Golfview, 174 So. 2d 767, holding at page 770 — "By this holding, the Supreme Court has created an innovation in the zoning law of Florida by casting on the zoning authority the burden of establishing by preponderance of evidence that the zoning restrictions under attack 'bear substantially on the public health, morals, safety or welfare of the community' the ordinance to be sustained."

The above quoted principle is not applicable in the case at bar because plaintiffs conclusively established, and the court so finds, through the city's witnesses as well as its own, that the existing zoning restrictions as applied to their property, have no relation to the public health, safety, morals or general welfare.

The uncontradicted testimony shows affirmatively that there have been changes in the character of the community immediately surrounding the plaintiffs' property, commencing in 1947 when the city authorized the Rickenbacker Causeway to be thrust through the Brickell Avenue residential section, continuing through the various court decisions in 1951, 1952, 1957, 1961 and up to the present time. The court is of the opinion, and so finds, that all of the conditions which justified a change in zoning in the decisions previously mentioned in this opinion, exist in this suit. All of the plantiffs' expert witnesses testified that the highest and best use of the plaintiffs' property would be for motel purposes, and that an R-5 classification would be the most reasonable classification of the property under the city's zoning code. This testimony, by plaintiffs' experts, is consistent with the fact that the only developed R-5A property in the city of Miami is the property known as the Brickell Town House, which required variances to build (R p. 20). From the testimony before me, it is apparent that the only time the R-5A zoning clasification could be utilized would be with a multiplicity of variances (R p. 22-222).

The court is of the opinion that a zoning classification should be able to be utilized by the property owner without resort to a multiplicity of variances. Variances should be granted only upon a showing of hardship — and a hardship to justify a variance must be peculiar to the particular property involved, and not general in character.

This court finds from careful consideration of the evidence and testimony in this case, the following —

1. The plaintiffs exhausted their administrative remedies prior to instituting these proceedings, and the court has jurisdiction of the subject matter and the parties.

2. The plaintiffs have sustained the burden of proving that the zoning classification R-5A, as presently applied to their property, is unrealistic, unreasonable, arbitrary and void. It violates the plaintiffs' rights guaranteed to them by section 12 of the Declaration of Rights of the Florida constituion, that they shall not be deprived of their property without due process of law and just compensation.

3. That it is not debatable, but conclusive, that plaintiffs' property cannot be used for its highest and best use under zoning classification R-5A.

4. That ordinance no. 6871 of the defendant city, as applied to plaintiffs' property, restricting its use to that of high-rise apartments, is void and unconstitutional, arbitrary and unreasonable.

The Supreme Court of Florida in City of Miami Beach v. Lachman, 71 So. 2d 148, said — "While Village of Euclid, Ohio v. Amber Realty Company (272 U.S. 365, 47 S. Ct. 114, 71 L. Ed. 303, 54 ALR 1016) approved the zoning and segregation of private property into residential, business and industrial districts, it was as equally emphatic that if such zoning did not have some substantial relation to the public health, safety, morals and general welfare, it would be held to be arbitrary, unreasonable and unconstitutional. There is no warrant whatever in this, or in any other case, to support the thesis that zoning boards are infallible, and that any kind of a zoning proposition they promulgate will be upheld. In other words, zoning boards are in the same category as all other administrative boards. Their ordinances and regulations will be given serious consideration and their judgments great weight, but where it is conclusively shown that they deprive one of his property without due process or otherwise infringe on state or federal constitutional guarantees unreasonably, such ordinances and regulations cannot be said to be reasonably debatable and will be stricken down." Of like import, are City of Miami Beach v. Prevatt, Fla., 97 So. 2d 473; Burrett v. Harris, 172 So. 2d 820; and Forde v. City of Miami Beach, 1 So. 2d 642.

The defense interposed by the city of Miami was based primarily upon esthetic considerations in an effort to preserve the beauty of a neighborhood. While the court is sympathetic to this motivation, it must apply the law, and in Hillsborough County v. Twin Lakes Mobile Homes Village, Fla., (1963) 153 So. 2d 64, it has been held that esthetic considerations do not give validity to zoning regulations.

In consideration thereof, it is ordered, adjudged and decreed as follows —

1. The R-5A zoning classification as applied to the plaintiffs' property by the defendant city is arbitrary, unreasonable, confiscatory and void, and has no substantial relation to the public health, safety or general welfare, and is therefore unconstitutional insofar as it applies to the plaintiffs' land.

2. The defendant city be and it is hereby enjoined from enforcing R-5A zoning against the property of the Plaintiffs legally described as — lots 70, 71, 72 and 73, block "B", Flagler (Mary Brickell), according to the plat thereof, as recorded in plat book 5, at page 44, of the public records of Dade County, Florida.

3. The defendant city shall, within 30 days from the date hereof, rezone plaintiffs' property to a use consistent with the facts and circumstances of this case.

4. The defendant city shall, through its counsel of record in this case, within 30 days herein mentioned, report to this court the zoning classification placed by the city upon the plaintiffs' property.

5. This court does hereby retain jurisdiction of this cause for the purpose of determining, upon plaintiffs' petition filed therefor, whether said zoning is legal and proper, and in accordance with the facts and circumstances of this case.

6. The costs of this action are taxed against the defendant in an amount to be determined by this court upon petition therefor, and when determined shall be deemed a part of this decree.