PER CURIAM.
Dade County appeals from a final decree in which the chancellor found that no zoning existed on the property in question and held that Dade County shall permit any use of the property which is within the BU-1A, Limited Business District, classification.
The property in question is described as Block 36, Pinewood Park, 1st Addition and is located between N. W. 95th Street and N. W. 95th Terrace from N. W. 5th Avenue to N. W. 5th Court in the unincorporated area of Dade County. It is the second block east of the North-South Expressway and is one lot deep.
When the Metropolitan Dade County Code was adopted in 1957, the property was situated within an area designated as “RU-3B, Bungalow Court District”, ¶ a designation placed thereon in 1938. The RU-3B classification is governed by Article XVII of Chapter 33 of the Code. The RU-3B classification permits every use permitted in RU-1, single family residential district, RU-2, two family residential district, RU-3, four unit apartment house district and bungalow courts provided the lot so used is at least one hundred feet wide, and contains at least ten thousand square feet of lot area.
On April 18, 1961, the County Commission enacted an Ordinance No. 61-17 which was codified as § 33-207.1 and provides as follows:
“Article XVII of Chapter 33 of the Code of Metropolitan Dade County, Florida entitled ‘RU-3B, Bungalow Court District’ is hereby repealed as it is the finding of the County Commission that the use of property within the unincorporated area for bungalow court use, as provided in such Article, provokes the overcrowding of property, as undue concentration of population, and is against the public health, morals, safety and welfare of the county; provided that any lots, parcels, tracts or areas heretofore zoned RU-3B shall retain such classification and rights derived thereunder, until the same are rezoned in accordance with law.”
The area originally embraced within the RU-3B district, including the subject property, has never been re-zoned with the exception of a one block area zoned BU-1A and the four corner lots at the intersection of N. W. 94th Street and N. W. 4th Avenue zoned BU-1, neighborhood business district. The BU-1A zone is located in lot 35, which is immediately west of the subject property. In the BU-1 A zone, there are two service stations.
Malcolm B. Wiseheart, agent, applied for a district boundary change from RU-3B *96 to BU-1A on all of Block 36, the subject property. Mr. Wiseheart desires to erect thereon a gasoline service station and a 7-11 grocery store.
On September 24, 1964, the zoning director recommended that the- application be denied because most of the subject property is now developed for residential uses and any change in zoning would precipitate strip zoning of N. W. 95th Street which would be detrimental to the surrounding residential neighborhood. The director also found that there is sufficient business zoning in the neighborhood to adequately serve the needs in the neighborhood. On December 11, 1964,' the Planning Department, after a study and report on the area, recommended denial of the request. On December 21, 1964, the Zoning Appeals Board recommended denial without prejudice. Final action was deferred so .that the Planning Department could make a study as to the highest and best use of the property. Following its study, the Planning Department submitted a report on February 15, 1965 and recommended the following course of action by the Board:
“1. Denial of the zoning change from RU-3B to BU-1A as requested.
“2. Direct the Director of the Building and Zoning Department to initiate an application to re-zone . the subject property and the area from the North-South Expressway to N. W. 4th Avenue between N. W. 93 Street and N. W. 96 Street with the exception of the area now zoned BU-1A,' to RU-4L. As stated on the preceding page, the existing RU-3B ' zone permits a density of from 16-20 dwelling units per residential acre. The RU-4L zone limits development to a density of up to 23 dwelling units per residential acre. Therefore, the proposed zoning would bring about no appreciable change in the maximum-permitted density. However, with the standards and controls written into the newly adopted RU-4L zone, the resultant development would be of a much higher character than that permitted in the RU-3B zone. The RU-4L zone also permits a planned multi-family residential development should land be as- , sembled in large enough parcels. A 100 foot frontage and 10,000 square feet of lot area is required. This would permit an overall plan for development in preference to single parcel development.”
On March 4, 1965, the Board of County Commissioners denied the requested change to BU-1A without prejudice.
The complaint in this action was filed April 22, 1965, requesting a declaration that plaintiff is entitled to a zoning change to BU-1A.
At trial, the county explained that a denial without prejudice is used so that an applicant may reapply for a zoning change without waiting the prescribed period of one year. It was conceded by -the county that Mr. Wiseheart’s application was denied without prejudice so that application could be made for a zoning change to RU-4L which would be approved.
Two zoning experts testified on behalf of the plaintiff that the property is not suitable for residential use due to size, location and the surrounding environment and that it's best and highest use is commercial use. Chester Sebrinski, Assistant Director and Zoning Control Supervisor of the Dade County Building and Zoning Department, testified that the zoning change should not be granted because it would result in strip zoning which eventually becomes' overbuilt with commercial uses depreciating the residential area behind it as well as the commercial buildings.' In his opinion, unless the entire neighbor-' ■ hood is re-zoned, the present zoning should be ■ maintained, otherwise, it would'consti *97 tute a spot zoning for the benefit of one particular property owner as against the entire neighborhood. Mr. Sebrinski also testified that the BU-1A classification on Block 35 was bad zoning and put in over his department’s recommendation. He did point out that Block 35 was closer to the expressway ramp than the subject property.
The chancellor, in his final decree, found that no zoning existed on the subject property. Further, that the tract in question, Block 36, should be zoned the same as Block 35 because:
“(a) both of the aforesaid blocks appear to be almost identical in shape, size, street abutments and otherwise;
“(b) both of these blocks are entirely different from all other blocks in the entire area in question as to shape, size, street abutments, etc.;
“(c) the reasons why the County rezoned Block 35 are not before the court, but whatever those reasons were they would seem applicable as well to Block 36, the tract in question, but would not apply necessarily to other property fronting on 95th Street and therefore there is no reason for all of 95th Street to be subjected to strip zoning, which seems to be a primary objection by Defendant;
“(d) the County by re-zoning Block 35 to BU-1A, itself caused a change noticeably away from residential use, and contributed . to the difficulties of Plaintiff and his principals to use the tract in question for the purposes and uses urged by the Defendant; and it would be only equitable to grant to Plaintiff the use privilege formerly extended by the County to the owners of Block 35.”
The chancellor ordered the defendant to permit any use of the property which is within the BU-1A classification and enjoined the defendant from denying any building permit for a filling station or 7-11 grocery store.
The County contends that the presence of existing filling stations in a residential area does not provoke other property to be so zoned; and, at the very least the issue here is fairly debatable. The County also contends that the property in question is presently zoned RU-3B.
Plaintiff argues that the fairly debatable rule is not applicable as the chancellor correctly found that no zoning existed on the property and the basis for the rule is that a zoning classification exists. Plaintiff asserts that when the County Commission repealed the RU-3B classification no part survived as the proviso to the repealing ordinance is repugnant to the body of the ordinance and can not be given effect without nullifying said ordinance; therefore, the proviso is inoperative and void.
“Where a saving clause is appended to an act which by express declaration or by necessary implication repeals another enactment, the law repealed is continued in force as to existing rights and pending actions in accordance with the terms of the saving clause.” [1]
The saving clause appended to § 33-207.1 of the Code is employed to continue the RU-3B classification on property so zoned before the repealing' ordinance, retaining all rights derived thereunder until the same are re-zoned in accordance with the law. The saving clause is employed as saving clauses are generally employed, i. e., to continue in force the law repealed as to existing rights. The clause is not repugnant to the body of the repealing ordinance. The legislative intent of the repealing ordinance is clear. The County Commission found that bungalow court use was contrary to the public health, morals, safety and welfare and, in the future no such zoning would be applied to any property in the unincorporated area in’ Dade County. Because a repealing statute cán not retrospectively impair vested rights, the saving clause was employed to retain *98 the rights previously derived thereunder until re-zoned in accordance with law.
Thus, the property which was zoned RU-3B prior to the repealing ordinance retained such zoning classification until .the County, with notice, etc., lawfully rezones said property. The chancellor’s finding that no zoning existed was in error.
The only other finding which the chancellor made to support the decree was that property similar in shape, size, street abutments and otherwise, and dissimilar from all other property in the area was given a BU-1A zoning classification, for reasons unknown to the court, and it would be only equitable to grant to plaintiff the same use privilege.
“The validity of every zoning ordinance is to be tested as applied to a particular piece of property at a particular time.”[2] It does not conclusively follow that the property in question must be zoned BU-1A because the adjoining property similar in all aspects and dissimilar from all others is so zoned.[3] The reasons ■ why the adjoining property was zoned BU-1A were not before the court, however, testimony revealed that it was considered bad zoning. It was also pointed out that the adjoining property borders on a North-South Expressway ramp and the subject property is one block from the expressway in the heart of improved residential property.
The record does not support a finding that a zoning more restrictive than BU-1A is arbitrary and unreasonable as applied to the subject property and would amount to confiscatory regulation.
The new RU-4L zoning classification permits RU-1, RU-2 and RU-3 uses as did the RU-3B classification. It is clear that it is not these uses which the County Commission found to be against public welfare. As Mr. Sebrinski stated at trial, the objectionable feature of the bungalow court classification was that under it “you have a series or group of small buildings, which would cover more'of the area and crowd more of the land in order to accommodate the people. RU-4L would permit you to erect a four story building * * on which you could elevate and leave open area for play areas and things you can’t have in RU-3B classifications.” The report of the planning department indicated that because of the standards and controls written into the newly adopted RU-4L zone, the resultant development would be of a much higher character than that permitted in the RU-3B zone.
Although the county has declared that bungalow court use is, in general, against the public welfare, it does not follow that the court can re-zone a particular property in a manner not contemplated by the county and which it contends would not be in accord with good zoning.[4]
For the reason stated above, the decree appealed is reversed. Pending re-zoning in accordance with the requirements of the county zoning law, the property here involved should retain its present RU-3B classification.
Reversed.

. 1 Sutherland, Statutory Construction § 2049 (3d ed. 1943).

. 1 Antieau, Municipal Corporation Law § 7.02.

. See City of Miami v. Walker, Fla.App. 1964, 169 So.2d 842; See also Helfant v. Zoning Board of Appeals of Town of Wilton, 153 Conn. 93, 214 A.2d 371 (1965).

. City of Miami v. Ross, Fla.1954, 76 So.2d 152; City of Miami v. Zorovich, Fla.App.1967, 195 So.2d 31.