223 So.2d 368 (1969)
Welcom H. WATSON and City of Fort Lauderdale, Appellants,
v.
MAYFLOWER PROPERTY, INC., a New Jersey Corporation Authorized to Do Business in the State of Florida, Appellee.
No. 1980.
District Court of Appeal of Florida. Fourth District.
April 22, 1969.
Rehearing Denied June 23, 1969.
*369 Donald H. Norman, of Ross, Norman & Cory, Fort Lauderdale, for appellant Watson.
Ronald B. Sladon, Dean Andrews and Elwood Obrig, Fort Lauderdale, for appellant city.
Martin F. Avery, Jr., of Berryhill Avery & Law, Fort Lauderdale, for appellee.
REED, Judge.
This litigation began in 1960 when the plaintiff, Mayflower Property, Inc., filed a suit in equity in the Circuit Court for Broward County, Florida, against the City of Fort Lauderdale to test the validity of a zoning ordinance of the city which imposed the classification of R-1-A (single family residential) on the plaintiff's property. Owners of property in the vicinity of the plaintiff's land were permitted to intervene. The intervenors and the city will be referred to herein as "defendants". The plaintiff's complaint in essence demanded that *370 the trial court declare the R-1-A zoning classification invalid as it applied to the plaintiff's property and enjoin enforcement of the R-1-A zoning ordinance against such property.
The defendants filed answers and the cause came on for trial in April 1964.[1] On 30 April 1964 the trial court entered a final decree in the cause which held:
"ORDERED, ADJUDGED And DECREED that the zoning which classifies the tract as R-1-A, restricting its use to single family dwellings, is arbitrary and unreasonable, has no substantial relation to the public health, safety, or general welfare, and is unconstitutional and void insofar as it applies to plaintiff's land."
The final decree was appealed to the Second District Court of Appeal and affirmed. Watson v. Mayflower Property, Inc., Fla.App. 1965, 177 So.2d 355. Certiorari was denied by the Florida Supreme Court, Watson v. Mayflower Property, Inc., Fla. 1965, 183 So.2d 215.
After the petition for the writ of certiorari was denied, the plaintiff applied to the City of Fort Lauderdale to have its property rezoned to the classification "R-4." The City of Fort Lauderdale rezoned the property not to R-4 but to "R-3-A". The plaintiff, being dissatisfied with the R-3-A zoning classification given his property, filed in the same circuit court proceeding a "Motion for Summary Post-Decretal Relief". This motion recited that the R-3-A zoning violated the final decree of 30 April 1964 and requested an order compelling, "the Defendant City of Fort Lauderdale, to re-zone Plaintiff's property R-4, which zoning classification was clearly demonstrated at the Final Hearing herein as being compatible with the findings of fact and conclusions of law, as enunciated in the Final Decree."
The defendants filed answers asserting that the R-3-A zoning classification was valid and not in violation of the final decree of 30 April 1964 or in violation of the plaintiff's constitutional rights.
The issues made by the motion for summary post-decretal relief and the answers were heard by the same trial judge. Evidence was presented. Based thereon the trial judge entered an order on 9 November 1967 pertinent parts of which are as follows:
"ORDER
"* * *
"In the final decree [that of 30 April 1964] it was found among other things that the highest and best use for the property was for hotels and apartments.
"* * *

"The evidence offered by the defendants failed to show that the R-3-A zoning had a substantial relationship to public health, safety, morals and general welfare, and supplemental relief therefore will be granted.
"Defendants' strongest showing was that traffic conditions would be increased however this is a matter that should be resolved by the City. The city planning director testified that, as to the area involved, the City's present plan was `totally inadequate'; that except for the existing plan for state road A1A there were no additional plans, other than the present street system.
"* * *
"It is, therefore
"ADJUDGED that the City Commission of the City of Fort Lauderdale rezone plaintiff's property in such a manner as will permit its use for hotels and apartments, height unlimited, such as R-4." (Emphasis added.)
It is from this order that the present appeal has been taken by the defendants.
The following statement of facts is taken from the evidence which was presented *371 to the trial court at the time of the hearing on the plaintiff's motion for summary post-decretal relief. The real property which is the subject matter of this action is located in the City of Fort Lauderdale. It has a thousand foot frontage on the Atlantic Ocean and is approximately 450 feet in width. On the west side of the property is Mayan Lake. Along the west boundary of Mayan Lake is a residential area containing single family dwellings in a subdivision known as Harbor Beach. Mayan Lake is about 200 feet wide and separates the plaintiff's property from the Harbor Beach Subdivision.
The surrounding zoning was described in the minutes of the planning and zoning board of the City of Fort Lauderdale which met to consider the plaintiff's application for R-4 zoning. The following is a quote from those minutes:
"Surrounding Area
Zoning: From the Port Everglades Inlet to this property there is approximately 2,000 feet of R-4 zoning, then this property unzoned and formerly R-1-A is 1,000 feet long, to the north is about 1,200 feet more of R-1-A, then 700 feet of R-4, and then about 2,800 feet of Bahia Mar or South Beach Park, unzoned. No more private land abuts the beach until just south of Sunrise Blvd., which is zoned S-1. The next R-4 begins a mile north of Sunrise Blvd. West of Mayan Lake the area is zoned R-1-A."
There are four multiple family zoning classifications in the City of Fort Lauderdale: R-4; R-3; R-3-A; and R-3-C. The characteristics of the classifications are as follows:
1. R-4. This permits hotels, motels, rooming houses, schools, private clubs, hospitals and many accessory uses such as bars and night clubs. There is essentially no limit on the height of buildings or on the dwelling unit density, that is, the number of dwelling units that may be built per net acre.
2. R-3. This classification permits apartments and multiple family dwellings. The height of buildings is limited to one hundred feet and the dwelling unit density is limited to 72 units per net acre for two bedroom apartments, 79 units for one bedroom apartments and 97 units for efficiency apartments.
3. R-3-A. This permits multiple family buildings and apartment houses, but imposes a height limit of 35 feet and a density limit of 36 dwellings per net acre.
4. R-3-C. This permits multiple family dwelling units with a height limit of 100 feet. Under this classification, plans for the development must be approved by the Planning and Zoning Board of the City of Fort Lauderdale.
Section 326(a) of the charter of the City of Fort Lauderdale (Special Acts of 1957, Chapter 57-1322) provides that applications for rezoning must be submitted to the planning and zoning board of the City of Fort Lauderdale. The planning and zoning board is charged with the duty of investigating the application for rezoning and providing the city commission with a recommendation on the application.
The minutes of the City Planning and Zoning Board meeting which considered the plaintiff's application for R-4 zoning contain a report that was made to the city by William C. Roop, the city planning director. Mr. Roop had been the city planning director since 1960. Before becoming the planning director for the City of Fort Lauderdale, he was the senior planning and civil engineer for the city planning department. He is a graduate of the University of Michigan and is registered as a civil engineer in the State of Florida. His report which is incorporated in the minutes of the City Planning and Zoning Board sets forth in detail considerations pertinent to the zoning of the plaintiff's property. It formed the basis of the recommendation by the City Planning and Zoning Board to the city commission.
*372 Mr. Roop's report indicates that if the plaintiff's land were zoned and developed in a manner consistent with R-4, the traffic which the development would generate would exceed the capacity of the arterial streets in the immediate area of the land and would also create congestion along the access route leading to the arterial roads from the plaintiff's property. This could create a problem with respect to the use of the access route by emergency vehicles and private vehicles being used in emergencies.
The report indicates that various recognized authorities on housing and housing developments recommend a maximum density of dwelling units per net acre ranging from 60 to 100. The report points out that one study of the Honolulu Metropolitan area revealed a close relationship between overcrowding and the mental and physical health of persons subject thereto.
The city planner states that if the plaintiff's property is zoned R-4, its use could exceed the maximum dwelling unit density recommended by the various authorities in the field. The use of the property, however, in a classification of R-3-A, because of its limit on density, would create no problem with respect to density of population or traffic.
The City Planning and Zoning Board recommended to the city commission that the property in question be rezoned from R-1-A to R-3-A. The City Commission of the City of Fort Lauderdale met on 5 April 1966 to consider the recommendation of the City Planning and Zoning Board. Based on the recommendation of the City Planning and Zoning Board the city commission enacted an ordinance zoning the property R-3-A.
At the hearing on the motion for post-decretal relief, Mr. Roop testified on behalf of the city. His testimony closely followed the substance of his report to the City Planning and Zoning Board. He stated that an R-3 or an R-4 zoning classification on the subject property would create serious traffic problems and could lead to a deterioration of the entire area.
A real estate appraiser also testified on behalf of the city. He testified that in his opinion the value of the subject property with R-3-A zoning was 1.5 million dollars.[2] He stated that in his opinion an R-4 zoning classification would not substantially increase the value of the property. He testified that the value of the homes on Mayan Lake range from $45,000 to $75,000. He stated that an R-4 zoning classification would create a traffic problem which could injure the Mayan Lake residential property. He expressed the opinion that the subject property could be satisfactorily developed under the R-3-A zoning classification.
Harry C. Hickson, the City of Fort Lauderdale building inspector, testified for the plaintiff. He expressed the opinion that the plaintiff's land should be zoned R-4 and that it was up to the city to solve any traffic problems thereby created (apparently through means other than zoning ordinances). On cross-examination Mr. Hickson testified:
"Q. Then is it your reason that you feel R-4 should be awarded to the subject property because other property around there has R-4? Is that what it boils down to?
"A. The location of this property, yes.
"Q. And it has nothing to do with the health of the community or the safety of the community or the over-all planning of the City of Fort Lauderdale or consideration of traffic or consideration of water or consideration of sewer; or consideration of fire or ambulance or anything else, but rather they have got some to the left and they have got some to the right so these people should have it too. Is that what it boils down to?
"A. You can say it that way."
*373 The point presented on this appeal is whether or not the R-3-A zoning classification as to plaintiff's land was invalid.
The constitutional validity of a zoning ordinance depends upon its relation to the public health, safety, morals and welfare. If a zoning ordinance has a substantial relationship to any one of these, it may be constitutionally valid, that is, within the police power of the legislative body. City of Miami Beach v. Weiss, Fla. 1969, 217 So.2d 836; City of Miami v. Rosen, 1942, 151 Fla. 677, 10 So.2d 307; City of Miami Beach v. 8701 Collins Avenue, Fla. 1954, 77 So.2d 428. A zoning ordinance, however, cannot be confiscatory. By this it is meant that the ordinance cannot deprive an owner of the beneficial use of his property by precluding all uses to which the property might be put or the only use to which it is reasonably adaptable. Forde v. City of Miami Beach, 1941, 146 Fla. 676, 1 So.2d 642.
It is not a prerequisite to the constitutional validity of an ordinance that it permit the highest and best use of a particular piece of property. City of Miami v. Zorovich, Fla.App. 1967, 195 So.2d 31; Zorovich v. City of Miami, Fla. 1967, 201 So.2d 554. See also the recent case of City of St. Petersburg v. Aikin, Fla. 1968, 217 So.2d 315. There the Florida Supreme Court points out that the mere fact that a land owner is proposing to make a reasonable use of his property and one which is consistent with the public welfare does not require the conclusion that the existing zoning which precludes the proposed use is constitutionally defective.
Zoning ordinances may be employed to promote the integrity of a neighborhood and preserve its residential character. In City of Miami v. Zorovich, supra, the court said at page 37:
"It has long been settled in Florida that zoning regulations which promote the integrity of a neighborhood and preserve its residential character are related to the general welfare of the community and are valid exercises of the legislative power."
It is self-evident that the general welfare of a community demands that in some part or parts of its land area citizens may develop their homes without fear of losing a substantial segment of their economic investment or the comfort and enjoyment of their homes by the encroachment of commercial developments.
It has also been held that zoning may be employed to protect the economic value of existing uses and to avoid serious traffic congestion. City of Miami Beach v. Lachman, Fla. 1953, 71 So.2d 148.
Other factors which are appropriate for consideration as objectives of zoning are outlined in City of Miami Beach v. Weiss, supra. At page 837 the court there stated:
"Zoning involves much more than mere classification. Among other things it involves the consideration of future growth and development, adequacy of drainage and storm sewers, public streets, pedestrian walkways, density of population and many other factors which are peculiarly within the legislative competence." (Emphasis added.)
Zoning is a legislative function. Where the validity of a zoning ordinance is fairly debatable, a court may not substitute its judgment for that of the zoning authority. City of Miami Beach v. Weiss, supra; City of Miami v. Rosen, supra; City of Miami Beach v. Lachman, supra; City of Miami Beach v. Wiesen, Fla. 1956, 86 So.2d 442; and, Friedland v. City of Hollywood, Fla.App. 1961, 130 So.2d 306. In City of Miami Beach v. Weiss the Florida Supreme Court said:
"On the merits of the controversy, the record here conclusively establishes that the zoning of the lands under consideration is palpably arbitrary and unreasonable and has no reasonably debatable relation *374 to the public health, safety or general welfare, and that it should be rezoned * * *."
Another good statement of the fairly debatable rule is found in City of Miami Beach v. Wiesen, supra. There the court at page 445 clearly expressed the policy to be followed in reviewing zoning ordinances:
"Recognizing the fundamental premise that there must be a line somewhere, the courts should be highly respectful of the decision of the legislative body which, under the law, is vested with the power and charged with the duty of zoning. The courts should tread lightly in this field and then only where the actions of the City Council are so unreasonable and unjustified as to amount to confiscation of property."
A zoning ordinance is presumed to be a valid enactment of the legislative body which promulgated it. The burden of proof of demonstrating the invalidity of such an ordinance is on the person who attacks the ordinance. City of St. Petersburg v. Aikin, supra.
The charter of the City of Fort Lauderdale specifically provided under Section 321 that zoning ordinances may be designed to lessen congestion in the streets, to promote health and general welfare, and to prevent overcrowding of land and undue concentration of population.
In applying these principles to the facts of the present case, we conclude that the action of the city commission of the City of Fort Lauderdale in zoning the subject property R-3-A was a valid exercise of the police power. A study of the evidence that was before the trial court indicates that the zoning ordinance in question was reasonably calculated to: (1) prevent excessive traffic on neighborhood roads surrounding the subject property; (2) prevent aggravation of an already serious traffic problem on State Road A1A; (3) avoid excessive density of population; and (4) to protect the single family residential development on Mayan Lake from deterioration which might be caused by excessive traffic. Each of these is a perfectly legitimate objective of zoning as illustrated by the cases cited above. Also, each is an objective authorized by that portion of the city's charter which confers the zoning power on the City of Fort Lauderdale.
That the restriction of the subject property to R-3-A zoning is not confiscatory in the constitutional sense is shown by the testimony of the real estate appraiser. That the restriction to R-3-A does not exceed the need for the regulation is shown by the report of the city planner. In his report he pointed out that use of the subject property in the R-4 zoning classification would exceed acceptable limits of population and traffic. Use of the property in R-3 classification would exceed acceptable limits for traffic. Use of the property in R-4 or R-3 would create a risk of blighting the residential area on Mayan Lake. Use of the property in the R-3-C zoning classification might be reasonable, but this is a special type of zoning classification under which the land owner is required to submit a proposed plan of development. No plan of development was ever submitted by the land owner in this case and, therefore, that zoning classification was not available to him. Use of the property in R-3-A zoning classification would not produce an unacceptable traffic or population density.
It is our conclusion that the constitutional validity of the ordinance was reasonably debatable and that the trial court erred in holding that the same did not have a substantial relationship to the public health, safety, morals and general welfare and ordering the city to rezone the property for a more liberal use.
We note in passing that the trial court, as indicated by the emphasized portion of the order of 9 November 1967, supra, may have considered the burden of proof to have been on the defendants. The law as we understand it is to the contrary. Any doubts about the question of burden of *375 proof have been resolved by the recent opinion of the Florida Supreme Court in City of St. Petersburg v. Aikin, supra.
The order of the trial court entered on 9 November 1967 from which this appeal has been taken is reversed.
Reversed.
CROSS, J., and KELLY, RICHARD, Associate Judge, concur.
NOTES
[1] For those interested in some of the procedural aspects of this case leading up to the final hearing, reference may be made to Mayflower Property, Inc. v. City of Fort Lauderdale, Fla.App. 1962, 137 So.2d 849.
[2] It appears from the record that the plaintiff paid approximately $480,000 for the land.