## ULRICH v. DADE COUNTY
No. 73-18606.

Circuit Court, Dade County.

January 11, 1974

Gerald F. Richman of Frates, Floyd, Pearson, Stewart, Proenza & Richman, Miami, for the petitioner.

Stuart L. Simon, County Attorney, Allen S. Gold, Assistant County Attorney, for the respondent.

ALAN R. SCHWARTZ, Circuit Judge.

*Opinion and final judgment denying petition for writ of certiorari and dismissing cause:* This cause came before the court upon petition for writ of certiorari to have reviewed a zoning resolution of the board of county commissioners of Dade County, dated and rendered on July 2, 1973, as Resolution No. Z-199-73. Petitioner contends that the resolution of the board is arbitrary and capricious, and is a confiscatory denial of petitioner's right to properly use the land.

This court has had the benefit of briefs filed by the parties, has examined documents and exhibits constituting the record in this cause, and had heard the oral argument of counsel for the petitioner and the respondent, and based upon the foregoing, renders the following opinion —

The cause arose out of an application for rezoning of three parcels of land designated as parcels A, B and C totalling 193.53+ acres. The subject property is bordered to the north by S. W. 138th Street and to the south by S. W. 152nd Street (Coral Reef Drive). It extends from theoretical S. W. 104th Avenue to theoretical S. W. 98th Avenue and is bisected by S. W. 102nd Avenue. As to parcel A thereof, which consists of 102 acres, petitioner had sought a district boundary change from AU (agricultural) and EU-M (estate use modified) to EU-M. The property immediately north and east of parcel A is zoned EU-M with a parcel to the northeast thereof zoned AU. The property immediately north and east of parcel A is zoned EU-M with a parcel to the northeast thereof zoned AU. The property to the west of parcel A is zoned RU-1; to the south, parcel A abuts a large flood control district drainage canal which winds through the subject property.

As to parcel B, which consists of only 6.34 acres, petitioner sought a change of district boundary classification from AU to RU-1 (single-family residential). The property immediately adjacent is zoned RU-1 with the Richmond Heights development immediately to the south.

Parcel C, which consists of 64 acres, lies immediately south of the flood control district canal; it abuts a junior high school and RU-1 zoning to the west, and Coral Reef Drive (S. W. 152nd Street) to the south. Fronting Parcel C on the south side of Coral Reef Drive are properties presently zoned AU, GU and RU-1. The property to the east of parcel C is zoned EU-1. Petitioner had

requested a district boundary change from AU to RU-TH (townhouse development) on this parcel.

The subject property consists of land which in substantial part is either being farmed or capable of being farmed. By its application, petitioner seeks to develop this property by constructing 700 or more units.

On May 31, 1973, petitioner's application came before the Metropolitan Dade County Zoning Appeals Board which, upon the recommendations of the planning director and building and zoning director, recommended approval of the application for parcels A and B but denied the requested boundary change to RU-TH on parcel C as being incompatible with the neighborhood and area concerned. In lieu thereof, the board recommended RU-1 on parcel C.

On July 2, 1973, the board of county commissioners considered the application on the subject property. In addition to the statements of interested parties, the record before the commission including an aerial and zoning map of the subject property. By Resolution No. Z-199-73, the board of county commissioners, expressing reluctance to change the use of the land from agricultural to residential when a substantial portion thereof was being farmed, denied with prejudice the application for rezoning on the subject property, finding that the requested district boundary changes would be incompatible with the neighborhood and area concerned and would be in conflict with the principles and intent of the plan for the development of Dade County.

The burden of parties seeking relief from a zoning resolution as to a particular piece of property is an extraordinary one and is upon the petitioner (property owner) to show that the application for rezoning raised a matter which was not a fairly debatable issue before the legislative authority. City of St. Petersburg v. Aikin, Fla. 1968, 217 So.2d 315; Smith v. City of Miami Beach, Fla. App. 1968, 213 So.2d 281, cert. denied, Fla. 1969, 220 So.2d 624; Metropolitan Dade County v. Kanter, Fla. App. 1967, 200 So.2d 624, cert. denied, Fla. 1967, 204 So.2d 329. A resolution does not fall outside the scope of the fairly debatable rule merely because it prevents the owner from using the proeprty in a manner which is most economically advantageous. If the rule were otherwise, no zoning could ever stand. City of Miami v. Zorovich, Fla. App. 1967, 195 So.2d 31, cert. denied, Fla. 1967, 201 So.2d 554; Metropolitan Dade County v. Greenlee, Fla. App. 1969, 224 So.2d 781. It is not necessary to the constitutional validity of the zoning resolution that it permit the highest and best use of a particular piece of property. See City of Miami v. Zorovich, supra; and County of

Brevard v. Woodham, Fla. App. 1969, 223 So.2d 344, cert. denied, Fla. 1969, 223 So.2d 344. As noted by the Supreme Court in St. Petersburg v. Aikin, supra, 217 So.2d 315, 317, the mere fact that the landowner is proposing to make a reasonable use of his property, and one which is consistent with the public welfare, does not permit the conclusion that the existing zoning which precludes the use is constitutionally defective. The zoning must be for a public, not a private use. It must be in the interest of the property owners as a whole. City of Tampa v. Consolidated Box Company, Fla. App. 1959, 110 So.2d 446. Thus, a landowner must conclusively show that the zoning resolution or classification is invalid as applied to him and that the resolution has the effect of completely depriving him of the beneficial use of his property by precluding all uses or the only use to which it is reasonably adapted. City of Clearwater v. College Properties, Inc., Fla. App. 1970, 239 So.2d 515; Forde v. City of Miami Beach, 1941, 146 Fla. 676, 1 So.2d 642. In this regard, the subject property substantially appears to be farmed or capable of being farmed, and consequently does not deprive the property owner of the beneficial use thereof. In the instant cause, the record fails to disclose any evidence on behalf of the petitioner indicating such a deprivation of beneficial use and petitioner, at oral argument before this court, has in fact conceded that there is no such evidence.

The court hereby finds and concludes that the zoning resolution in question constitutes a reasonable and proper exercise of the police power. The time-honored test is whether or not the particular resolution, as applied to the particular piece of property, is "fairly debatable". That is, if the question of whether a zoning ordinance meets the constitutional test of serving the health, safety, morals or general welfare of the public is open to dispute or controversy on grounds that make sense and are fairly debatable, then the court should not substitute its judgment for that of the zoning authority. See Smith v. City of Miami Beach, supra; City of Miami Beach v. Wiesen, Fla. 1956, 86 So.2d 442; City of Miami Beach v. Lachman, Fla. 1953, 71 So.2d 148; Davis v. Situs, Inc., Fla. App. 1973, 275 So.2d 600.

In this cause the board of county commissioners, as the legislative body, was apparently reluctant to substantially increase the density of the area, add significantly to its traffic congestion, and change the use of the land from agricultural to residential when a substantial portion thereof was being farmed. To require that the property be zoned EU-M and RU-1 because the neighboring property is so zoned would be to apply the "domino theory" of zoning without regard to the nature or use of the subject property. Petitioner has not demonstrated that the agricultural use of the property

is either out of character with or otherwise impairs the integrity of the surrounding residential neighborhood. To the contrary, a mixed blend of agricultural and residential use effectively promotes the integrity of the neighborhood and preserves its character and, as such, relates to the public welfare and is a proper exercise of the police power. City of Miami v. Zorovich, supra; County of Brevard v. Woodham, supra; Metropolitan Dade County v. Greenlee, supra. It is also within the police power to avoid an overcrowding of the land and an undue concentration of population as well as to prevent significant traffic congestion. See City of Miami Beach v. Lachman, supra; County of Brevard v. Woodham, supra; Watson v. Mayflower Property, Inc., Fla. App. 1969, 223 So.2d 368, 373, writ discharged, Fla. 1970, 233 So.2d 390; City of Miami Beach v. Weiss, Fla. 1969, 217 So.2d 836, 837; Coronet Homes, Inc. v. McKenzie, Sup. Ct. Nev. 1968, 439 P. 2d 219. Cf. Town of North Redington Beach v. Williams, Fla. App. 1969, 220 So.2d 22.[1]

In an even larger and more basic sense, the preservation of agricultural use — when, as in this case, there is no showing that the imposition of such a use is economically confiscatory — represents a proper exercise of the police power and of the legislative authority of the county commission in whose hands that power is reposed. The decision of the county commission in this case, opting for the continued existence of agricultural use in Dade County when economically feasible, represents a real commitment to a philosophy concerning the "quality of life" in our county which cannot by any means be deemed not "fairly debatable."

---

1. Petitioner has also failed to sufficiently demonstrate that parcel C of the subject property should be rezoned to a classification no less restrictive than RU-TH. The record discloses that the RU-TH classification would be incompatible with the existing single-family development to the south and to the west. Petitioner suggests that townhouses would nevertheless be appropriate because they were approved in the immediate vicinity of petitioner's property. The approved townhouse zoning, however, was a quarter of a mile to the west of the subject property. It is located at a major intersection which was testified to as being a proper location for such development. The fact that petitioner's property is situated in an area where townhouses are located is not alone sufficient to support the position that he be given the same latitude in the use of his property. Dade County v. Wiseheart, Fla. App. 1967, 198 So.2d 94, 98; City of Miami Beach v. Ocean and Inland Co., Fla. 1958, 3 So.2d 364; Dade County v. Mitchell, Fla. App. 1966, 188 So.2d 359, cert. denied, 194 So.2d 620 (1966).

In recent years, it has become increasingly recognized that the "quality of life" for our present citizens, as well as the economic health of our community, may be best promoted by permitting, indeed encouraging diverse usages of the land in the county, specifically including agricultural use, rather than by permitting an unending increase in residential usage and thus in population growth. This change in attitude is reflected by the preliminary results of extensive studies undertaken by the citizens advisory task forces recently appointed by the Metropolitan Dade County Planning Advisory Board to develop a modern comprehensive development master plan for the county.[2] The preliminary draft of the proposed metropolitan development policies for Metropolitan Dade County (December, 1973), states as one of the goals, objectives and policies of the plan —

I. TO PROVIDE THE BEST POSSIBLE DISTRIBUTION OF LAND USES, BY TYPE AND DENSITY TO MEET THE PHYSICAL, SOCIAL, CULTURAL AND ECONOMIC NEEDS OF THE PRESENT AND FUTURE POPULATION IN A MANNER WHICH WOULD MAINTAIN OR IMPROVE THE QUALITY OF NATURAL AND MAN-MADE ENVIRONMENT.

A. The county should delineate areas to be developed; prepare a program for extending services to these areas on a staged basis; plan land uses; and establish urban design criteria for these areas.

1. Limit urban expansion to those areas most suitable for new development or redevelopment on the basis of accessibility, cost for extension of services, terrain, and criteria directed toward preserving vital aspects of the county's natural and man-made environment. (p. 27)

\* \* \*

B. Allocate land use for the various purposes in keeping with the physical, social, cultural and economic needs of the county's population. (p. 28)

---

2. Petitioner here relies heavily upon the fact that the *existing* master plan, formulated well over a decade ago, provides for residential use of the property involved in this case, see Hall v. Korth, Fla. App. 1971, 244 So.2d 766. However, this plan evolved at a time when, it is fair to say, our society in general and Dade County in particular were far more oriented toward a population growth and land-use culture. At this time, the existing master plan is "in revision" in the light of changing attitudes and needs. Its contents could not, in any event, bind either the commission or the courts in the discharge of their respective roles in the zoning process.

* * *

7. Agriculture must be encouraged as a viable economic use of Dade County's land. (p. 29) [3][4]

In the present circumstances, therefore, and to paraphrase the *Zorovich* case, supra, a zoning classification which by preserving agricultural use promotes the balance and integrity of the community as a whole and which preserves its uniquely diverse character is related to the general welfare of the community and is a valid exercise of the legislative power. See also Just v. Marinette County, 56 Wis. 2d 7, 201 N.W. 2d 761, cited in Hillsborough County Environmental Protection Commission v. Frandorson Properties, Fla. App. 1973, 283 So.2d 65, 68. Even if the court disagreed with that legislative choice — which it emphatically does not — it would therefore be powerless to interfere. [5]

Based upon the foregoing, it is thereupon ordered and adjudged that the petition for writ of certiorari be denied and the cause dismissed.

---

3. In seeking

"VII. TO ENCOURAGE THE RETENTION OF OPEN SPACE ADJACENT TO THE METROPOLITAN AREAS FOR RECREATIONAL, AGRICULTURAL AND AQUIFER RECHARGE PURPOSES, TO LIMIT OUTWARD SPREAD OF URBANIZATION WHICH INCREASES COSTS OF SERVICES AND DECREASES EFFICIENCY OF TRANSPORTATION AND WHICH DISCOURAGES THE RENEWAL OF OLDER, INNER CITY AREAS." (p. 40)

the report in question (p. 40) recommends that the county

"1. Require a two-thirds affirmative vote of the total county commission to change a zoning classification from AU or GU."

4. The commitment of the state as a whole to the encouragement of farming and to the preservation of agricultural use from the inroads of urbanization is demonstrated also by the enactment of the "green belt" statute, F.S. §193.461.

5. This court has also considered petitioner's reliance on Hall v. Korth, Fla. App. 1971, 244 So.2d 766. In that case, the district court found substantial evidence to support the trial judge's determination that the

action of the county commission in denying an application for change in zoning of a tract from basic agricultural to that which would permit a planned unit development was capricious and without reasonable basis on the record before the county commission. The record in the *Korth* case, however, does not disclose the location of the property therein involved, the use made of the property, if any, for agricultural purposes, and the nature of the zoning in the perimeter lands adjoining the development. Nor does the record disclose that the circuit court had the benefit of the zoning or aerial maps which are a part of the record in this cause and which constitute competent, substantial evidence to support the action of the county commission. While the language of the learned circuit court judge, as set forth in the district court's opinion, is persuasive, each zoning case must be determined on its individual facts in light of the nature and use of the property involved among other related matters. Waring v. Peterson, Fla. App. 1962, 137 So.2d 268.