# BRISKER, et al. v. METROPOLITAN DADE COUNTY

## Case No. 82-11664 CA (16)

Eleventh Judicial Circuit, Dade County

November 26, 1984

### APPEARANCES OF COUNSEL

**Darrey A. Davis, Steel Hector & Davis,** for plaintiffs.
**Eileen R. Mehta,** Assistant County Attorney, for defendant.

### OPINION OF THE COURT

THOMAS A. TESTA, Circuit Judge.

### *FINAL JUDGMENT*

This action for declaratory relief directly challenges on constitutional

grounds the validity of the Metropolitan Dade County Zoning Ordinance, as applied to the particular property owned by plaintiffs. The general zoning ordinance, known and cited as Chapter 33 of the Code of Metropolitan Dade County, prescribes districts governing the use of all real property in the unincorporated area of the County and provides procedures under which the provisions thereof are applied to particular real property.

Plaintiffs' attack on the validity of the Metropolitan Dade County Zoning Ordinance as applied to their particular property is based on the constitutional ground of equal protection of the laws. Plaintiffs assert that the provisions of the general zoning ordinance were applied to prohibit the existing residential use of their property in effect for more than eighteen years, and to require that the subject property shall be used solely for agriculture. Plaintiffs' property was singled out for agricultural use, while similarly situated property in the neighborhood was permitted to be used for residential purposes. The discriminatory application of the general zoning ordinance to the subject property deprives plaintiffs of equal protection of the laws, contrary to the guarantees of the Constitution of the United States and the Florida Constitution.

### Jurisdiction

The County raises a threshold question of subject matter jurisdiction. The County contends that plaintiffs simply seek review of two zoning resolutions, and that the exclusive method of reviewing zoning resolutions is by certiorari or appeal, and a separate equitable proceeding is not appropriate to review zoning resolutions. This question was raised and adjudicated on motion to dismiss. On the basis of the allegations of the complaint and the trial evidence, the Court concludes that it has subject matter jurisdiction.

It is well settled that the trial court has subject matter jurisdiction of an action directly challenging on constitutional grounds the validity of a zoning ordinance as it applies to the property of the plaintiffs. *See Bama Investors, Inc. v. Metropolitan Dade County,* 349 So.2d 207 (Fla. 3d DCA 1977), *cert. denied,* 359 So.2d 1217 (Fla. 1978), holding that:

> (W)here, as in the case sub judice, the complaint is a challenge to the validity of a zoning ordinance as it pertains to complainant's property, then an equitable proceeding is proper. See Kasser v. Dade County, 344 So.2d 928 (Fla. 3d DCA 1977).

. . . . . . . . . . .

(T)he right to make a reasonable use of property is fundamental and

**156**

constitutionally protected under the Fifth Amendment to the United States Constitution and Article I, Section 9 of the Florida Constitution. When this constitutional right is interfered with through a zoning ordinance . . . that individual, after exhausting administrative remedies, cannot be precluded from instituting an equitable suit seeking to enjoin the enforcement of the zoning ordinance as applies to his (or her) property and the local governmental authority from infringing upon his constitutionally protected property rights. (citation omitted).

See *King's Bay Property Owners Association, Inc. v. Ryan*, 403 So.2d 1356, 1359 (Fla. 3d DCA 1981), (An attack on the constitutionality of existing zoning ordinance as related to plaintiffs' property provides a proper basis of jurisdiction.)

A suit for declaratory relief is the proper way to challenge the validity or constitutionality of an ordinance. *Odham v. Petersen*, 398 So.2d 875, 876 (Fla. 5th DCA 1981). *See* also *Transamerican Properties, Inc. v. City of Riviera Beach*, 400 So.2d 803 (Fla. 4th DCA 1981).

## Findings of Fact

The real property owned by plaintiffs consists of approximately 30 acres of vacant land located on the South side of Bauer Drive between Krome Avenue and Tennessee Road. It has an elevation of 15 feet, the highest elevation in the area, and it is particularly suitable for residential use. It has never been devoted to agricultural use. It has been under the same ownership continuously for the past 30 years. When plaintiffs purchased the subject property in May 1954, it was partially zoned for residential use. In 1963, the entire parcel was zoned for residential use. It remained zoned for residential use for 18 years, until 1981, when it was rezoned for agricultural use only.

Plaintiffs' property faces Owaissa Bauer Park, a County park, located on the North side of Bauer Drive. The County also owns the property immediately adjoining plaintiffs' property on the West side, which County property is zoned for residential use.

The Official County Zoning Map (plaintiffs' exhibit 3) shows that all the property on Bauer Drive between Krome Avenue and Tennessee Road is zoned for residential use, except the parcel at the intersection of Bauer Drive and Krome Avenue which is zoned for business use. The zoning map shows that the property adjoining plaintiffs' property on the East and the West is zoned for residential use. Single family residences have been constructed immediately East of plaintiffs' property. Residential use is permitted on all other property similarly situated on Bauer Drive.

157

The zoning map shows platted subdivisions containing approximately 90 single family residential parcels located South of plaintiffs' property. The zoning map includes 22 parcels of land, excluding the residential subdivisions, within the area involved. Of the total 22 separate parcels, only 4 are zoned for agricultural use. The remaining 18 parcels are zoned for residential or business use. The critical neighborhood reflected by the zoning map consists of a mixed blend of residential and agricultural use, which has existed without change for many years.

The County's computer print-out of building permits (plaintiffs' exhibit 4) shows that the County issued 88 building permits for residential improvements in the subject area, after denying plaintiffs the residential use of their property and imposing agricultural use on the property. And after singling out plaintiffs' property for agricultural use, the County granted to the owner of another parcel in the neighborhood the right to use property partially zoned for agricultural use for business use. See plaintiffs' exhibit 20.

In 1973, the existing residential use of the subject property, which had been in effect since 1963, was modified by mutual agreement between the County and the plaintiff property owners, pursuant to public hearing, for the purpose of upgrading the residential use of the property in accordance with a prescribed site development plan. The approved residential use of the subject property in compliance with the prescribed site development plan was assured and guaranteed by declaration of restrictions constituting a covenant running with the land recorded June 5, 1973, among the public records of Dade County. The residential use applied to the subject property in 1963, and reconfirmed as modified in 1973, continued in effect until 1981.

In 1981, the plaintiffs filed a zoning application for approval of a revised plan for use of the subject property for single family residences. The purpose of the application was to substitute the revised plan of residential development for the 1973 plan. The revised residential use plan substantially reduced the overall density of the property to 1.9 single family residences per acre. It is undisputed that the proposed new plan of development provided a much more desirable residential use plan than the approved 1973 plan. The County Public Works Department recommended approval of the revised site development plan. The Director of the County Building and Zoning Department recommended approval of the revised plan. The Director of the Planning Department recommended disapproval of the revised plan.

It appears that there has been no change in the character of the neighborhood. A mixed blend of residential and agricultural use has

158

existed for many years without change. In fact, the trend, if any, has been toward the construction of some single family residences within the area. No sign of increased agricultural use has been demonstrated.

Consideration of plaintiffs' application was deferred. Meanwhile, the Director of the Planning Department unilaterally filed a subsequent application to rezone the subject property for agricultural use. Plaintiffs' application for approval of a revised residential site development plan, and the Zoning Director's application to rezone the property for agricultural use only, were set for public hearing before the Board of County Commissioners on the same date. The Planning Director and the Zoning Director made conflicting recommendations. The Zoning Director recommended approved of plaintiffs' application. The Planning Director recommended denial of plaintiffs' application, and recommended approval of his own application.

The Board of County Commissioners denied plaintiffs' application for approval of their revised residential site development plan, and granted the Zoning Director's application. The County Commission applied the provisions of the general zoning ordinance to plaintiffs' property to deny any residential use of the property and to change the existing residential use to agricultural use.

The Court finds that under factual circumstances established by the trial evidence the Board of County Commissioners on December 3, 1981, applied the provisions of the County's general zoning ordinance to the particular real property owned by plaintiffs in a discriminatory manner that denied to plaintiffs the equal protection of the laws. The proposed continued residential use of the subject property would not constitute a land use detrimental to the public health, safety, welfare or morals. The action denying any residential use of the subject property and restricting the use to agriculture only unlawfully infringes upon plaintiffs' constitutionally protected property rights.

### The Comprehensive Development Master Plan

The County contends its 1981 zoning action, which singled out plaintiffs' property for agricultural use, was justified because the County's Comprehensive Development Master Plan indicated the surrounding area should be devoted to open space and agricultural use. The County asserts that to permit a use in conflict with its Comprehensive Development Master Plan would be contrary to state law. The County suggests that zoning action which tends to encourage agriculture has consistently enjoyed the protection of the courts.

Section 2-114 of the County Code, which adopted the Comprehensive Development Master Plan, provides:

159

Development actions or orders, including zoning, that preceded July 11, 1979, shall remain in full force and effect as if this section had not been adopted but subject to application and review in accordance with the Dade County Zoning Code.

At the time of the adoption of the present plan on July 11, 1979, plaintiffs' property had been zoned for residential use continuously for 16 years. The existing residential use of plaintiffs' property was unaffected by the adoption of the plan. The existing residential use remained in full force and effect after adoption of the plan until 1981, when the County's general zoning ordinance was applied to plaintiffs' property only to change the existing residential use to agricultural use. The discriminatory application of the zoning ordinance to plaintiffs' property only (and not to any other similarly situated property), infringes on the constitutional guaranty of equal protection of the laws, and cannot be justified under the guise of compulsory compliance with the guidelines for future development indicated by the plan.

The Court is legislatively empowered to consider the reasonableness of the comprehensive plan in relation to the issue justiciably raised. Sec. 163.3194, Fla. Stat.

The contention that the Comprehensive Development Master Plan precludes any use of property which does not conform to the guidelines prescribed therein has been rejected by the Third District in *Dade County v. Florida Mining and Materials Corporation*, 364 So.2d 31, 34 (Fla. 3d DCA 1978), wherein the court held:

> The Comprehensive Development Master Plan, as adopted by the County Commission, is a guide to future development in Dade County to be conformed with when applying for future development. Section 2-114, Code of Metropolitan Dade County. However, the Master Plan is not beyond being altered by the courts where, under the facts of a particular case, strict adherence to the Master Plan proves to be unreasonable, arbitrary and/or confiscatory.

The County concedes that the Comprehensive Development Master Plan does not preclude the Board of County Commissioners from taking zoning action which conflicts with the plan. The *Florida Mining* decision, *supra*, points out that after adoption of the plan the County Commission has exercised its discretion to grant uses of property which conflicted with the guidelines prescribed by the plan, 364 So.2d at 34.

Moreover, the trial testimony establishes that the residential use of plaintiffs' property would not adversely affect the guidelines and objectives prescribed by the Comprehensive Development Master Plan (Transcript, p. 68).

160

The County also relies on its 1983 Agricultural Land Use Plan adopted April 19, 1983, after this action was filed. The 1983 plan embraces between 80,000 and 85,000 acres of land which are designated for future agricultural use. Although plaintiffs' property is included, it is only a relatively short distance from the boundary line drawn for the agricultural area. The Court concludes that this plan may not be retroactively applied to defeat plaintiffs' pending claim based on constitutional grounds.

## Conclusions of Law

Plaintiffs' attack on the validity of the Metropoitan Dade County zoning ordinance as applied to their particular property rests on the constitutional ground of equal protection of the laws.

The constitutional guaranty of equal protection of the laws require that all persons shall be treated alike under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed. Equal protection of the laws means that the rights of all persons must rest upon the same circumstances. The decisions supporting this proposition are virtually limitless in number. As the United States Supreme Court held in *Frost v. Corporation Commission*, 278 U.S. 515, 49 S. Ct. 235, 73 L.Ed. 483, 489:

> The purpose of the clause in respect of equal protection of the laws is to rest the rights of all persons upon the same rule under similar circumstances. (citations omitted)

The Florida Supreme Court in *Davis v. Florida Power Co.*, 64 Fla. 246 So.759, 766, held:

> Equal protection of the laws requires that in governmental regulations every person shall be accorded rights, privileges, exemptions, and remedies substantially similar to those that are given to others under practically similar circumstances and conditions; . . . and that no essentially unjust or merely arbitrary discriminations of a substantial nature shall be made between persons who are in reality similarly situated or conditioned with reference to the regulations and its practical consequences . . .

The constitutional requirements of equal protection of the laws forbid the selection of certain persons as the beneficiaries of special zoning concessions or exceptions, while at the same time and under the same circumstances denying to another person the same benefits. In *Richey v. Wells*, 166 So. 817, the Supreme Court of Florida held that:

> It is settled law that under the Fourteenth Amendment to the

Constitution of the United States an unjust and illegal discrimination may arise out of the enactment of a legislative measure that makes such unjust and illegal discrimination possible, although it is not expressly required by the terms of the law itself as written.

Though a law be fair on its face and impartial in appearance, yet, it is applied and administered by public authority with an unequal hand, so as to practically make unjust and illegal discriminations between persons in similar circumstances material to their rights, the denial of equal justice is still within the prohibition of the Federal Constitution under the Fourteenth Amendment. . . .

The decision in *Georgia Southern and Florida Railway Co. v. Seven-up Bottling Company of Southern Georgia, Inc.*, 175 So.2d 39, 40 (Fla. 1965), states:

The purpose of the equal protection clause has been many times stated by this court, but never more simply or clearly than in Davis v. Florida Power Company, 1913, 64 Fla. 246, 60 So. 759, as follows:

"The inhibition that no state shall deprive any person within its jurisdiction of the equal protection of the laws was designed to prevent any person, or class of persons, from being singled out as a special subject for arbitrary and unjust discrimination and hostile legislation."

The landmark case of *Davis v. Sails*, 318 So.2d 214 (Fla. 1st DCA 1975), discusses the interrelationship between the tests which courts apply to determine whether a zoning ordinance or its application infringes upon constitutional principles. The *Davis* court stated:

It is clearly the duty of the court to determine the validity of zoning ordinances as applied to a specific parcel of property. This proposition was enunciated by the Supreme Court of Florida in a 1949 case, City of Miami Beach v. First Trusts Co., 45 So.2d 681. . . .

. . . . . . . . . . .

Of course, it is always a matter for the court to determine whether a zoning authority acted reasonably or fairly or whether capriciously or arbitrarily. The fairly debatable rule applies to the application of the ordinance and does not modify the requirement that the ordinance itself and the application thereof must have a reasonable relationship to the health, safety, morals or general welfare.

Equal protection of the laws requires that all persons "similarly circumstanced" receive equal protection. *Rodriguez v. Jones*, 64 So.2d

162

278 (Fla. 1973); *City of Coral Gables v. Wepman*, 418 So.2d 339, 342 (Fla. 3d DCA 1982).

This is not a case of the preservation of existing agricultural use as involved in *Ulrich v. Dade County*, 40 Fla. Supp. 34 (Fla. 11th Ct. 1974). Here, a new agricultural use is imposed upon land for which residential use was permitted for many years. Moreover, *Ulrich* holds that a "mixed blend of agricultural and residential use effectively promotes the integrity of the neighborhood and preserves its character." 40 Fla. Supp. at 38. This is precisely the situation that existed in the subject neighborhood for many years—a situation that the County seeks to change.

The doctrine of administrative res judicata is firmly entrenched as part of the decisional law in relation to zoning cases. *Coral Reef Nurseries, Inc. v. Babcock Co.*, 410 So.2d 648, 651 (Fla. 3d DCA 1982). In the absence of any change in the neighborhood in this case, the doctrine appears applicable.

It is not the function of the Court to zone property since the ultmate classification of property under a zoning ordinance involves the exercise of legislative power. *Metropolitan Dade County v. McGeary*, 291 So.2d 28 (Fla. 3d DCA 1974). However, in this case the discriminatory action of the County Commission denied a more restrictive residential use submitted by plaintiffs and rezoned the subject property for agricultural use. The parties are in accord that the residential use in effect prior to the action of the County Commission is inappropriate. Under the circumstances, it is apparent that the subject property should be zoned for appropriate residential use.

Accordingly, it is ordered and adjudicated as follows:

1. The rezoning of the real property owned by plaintiffs from residential use to agricultural use is declared invalid and unconstitutional, and Resolution No. Z-277-81 and Resolution No. Z-278-81 are hereby quashed and declared null and void.

2. The Board of County Commissioners shall promptly reconsider the merits of the proposed residential use depicted in the tenative plan and development plan involved as the subject matter of Resolution No. Z-277-81, in the light ofthe criteria prescribed herein. If the Board, in the exercise of its legislative discretion, fails to approve said proposed site development plan, the Board shall simultaneously zone the subject property for appropriate single family residential use which shall be no more restrictive as to classification and density than said proposed site development plan.

3. The Court retains jurisdiction for the purpose of enforcing the requirements of this final judgment.